[Civ. No. 4476.  First Appellate District, Division Two.—March 12, 1923.]

## UNA LOGAN HOWATT et al., Respondents, v. HUMBOLDT MILLING COMPANY (a Corporation), et al., Appellants.

[1] BOUNDARIES—TRUE LOCATION OF DIVIDING LINE—EVIDENCE.—In this action to quiet title to certain land, and to recover damages for the cutting and removal of timber therefrom by defendants, the evidence was such as to justify the finding of the trial court as to the true location of the township or boundary line dividing the lands of the respective parties.

[2] ID.—UNCERTAINTY OF LOCATION OF TRUE LINE—AGREED BOUNDARY —EVIDENCE.—In such action, the evidence showed that the predecessors in interest of the respective parties to the action were uncertain as to the location of the true boundary between their lands and, with the intent to establish such line, they agreed with each other that the boundary line between their respective properties should be the line which the court found to be the true boundary and which commenced at a certain specified corner and ran west to another specified corner.

---

2. Location of boundary lines by acquiescence or agreement, notes, 69 Am. Dec. 711; 27 Am. Rep. 239.

[3] ID.—AGREED BOUNDARY RULE—UNCERTAINTY—DISPUTE.—The agreed
boundary rule may be invoked where the true boundary line is
doubtful or uncertain, and it is not necessary that there should
be an actual dispute between the parties as to the location of the
true line.

[4] QUIETING TITLE—ADVERSE POSSESSION—EVIDENCE.—In this action
to quiet title, the evidence having shown that the true boundary
line between the lands of plaintiffs and defendants was marked
upon the ground, that the parties built up to it and occupied the
lands on each side thereof, that the portion thereof inclosed by
the division and other fences was farmed by the parties and
that the portion thereof covered by timber was occupied and
used for the ordinary use and in the ordinary way, and that plain-
tiffs and their predecessors in interest had paid all the taxes
against the land in dispute from 1875 to the date of the judg-
ment, and that defendant and his predecessors had never exercised
any ownership and never asserted any claim of right to that
portion of the land at any time during the period from 1878
to 1920, plaintiffs would have been entitled to judgment based
upon their rights by adverse possession, had they not been able
to prove their title under the agreed boundary rule.

APPEAL from a judgment of the Superior Court of
Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cooley & Crowley, Irwin T. Quinn, Puter & Quinn and
A. J. Monroe for Appellants.

Mahan & Mahan, H. C. Nelson and L. M. Burnell for Re-
spondents.

NOURSE, J.—Plaintiff sued to quiet title to the south
half of the southeast quarter of section 34, township 2
south, range 3 east, Humboldt meridian, and to recover
damages from the defendants caused by their cutting and
removing trees, timber, and bark therefrom. The complaint
was framed in three separate causes of action, the first
alleging that the plaintiffs were the owners in fee and en-
titled to the possession of the premises; the second alleging
that the predecessors in interest of the parties plaintiff and

4.  Applicability in case of disputed boundaries of rule against con-
veyance of land held adversely, note, 35 L. R. A. (N. S.) 746.

defendant, who were the owners respectively of the south half of the southeast quarter of section 34, township 2, and of the north half of the northeast quarter of section 3, township 3, were uncertain as to the location of the true line between their said properties, and with intent to establish such line agreed upon a line commencing at the section corner common to sections 34 and 35 of township 2 and to sections 2 and 3 of township 3 as established, marked and designated on the ground by John M. Ingalls in the year 1872 and running thence west a distance of 2,960 feet in a straight line which, if extended, would intersect the section corner common to sections 33 and 34 of township 2 and sections 3 and 4 of township 3 as established by S. W. Foreman in the year 1875. It was also alleged that in accord with said agreement the respective parties hereto, and their predecessors in interest, continuously acquiesced in and abided by said line as the true line between their respective properties for a period of more than thirty years prior to the 1st of April, 1920, and occupied, used, and erected improvements upon their respective lands up to the common boundary line which was then established; the third alleging that between the first day of April, 1920, to the commencement of the action the defendants, without the consent of the plaintiffs, entered upon a portion of the land claimed by plaintiffs and cut and removed therefrom trees, timber, and bark growing thereon to plaintiffs' damage in the sum of $10,000. The answer to the first cause of action was a general denial based upon a want of information and belief. To the second cause of action the defendants interposed a defense that the boundary line as claimed by the plaintiffs is not the true line established by the United States government; that the survey made by Ingalls in 1872 was merely for the purpose of establishing the exterior lines of township 2 and that said survey was not approved by the United States surveyor-general until after a survey by S. W. Foreman covering both townships and section lines had been made, filed, and approved; that the true boundary line between the properties of the respective parties is the line established by said Foreman in 1874 in accordance with the survey made by him in which the corner common to sections 34, 35, 2 and 3 is different from the corner known as the Ingalls corner; that the boundary line claimed by

the plaintiffs ran some 400 feet south of the township line surveyed and established by said Foreman. The answer also denied that the predecessors of the parties at any time agreed upon the common boundary line or that they acquiesced in the line claimed by the plaintiffs. The defendants did not deny the allegation relating to entry upon the premises and the cutting and removing of timber therefrom, but did deny that the plaintiffs were damaged by any act of theirs.

On the issues so joined the trial court found that all the allegations contained in plaintiffs' complaint were true except as to the amount of damages sustained by plaintiffs and that the amount of damages was $4,692.85. Special findings were made to the effect that the subdivisional survey of township 2 south of range 3 east, Humboldt meridian, and the official plan of said township, approved January 11, 1876, and filed in the local land office at Eureka, California, January 18, 1876, and by reference to which the land in said township was sold, were based on the survey of the south line of said township made by Ingalls in 1872, and that said survey was the last approved and accepted survey of the south line of said township. It was also found that at all times mentioned in the complaint plaintiffs and their predecessors in interest were the owners in fee and entitled to the possession of the lands described in the complaint, and that the true line or boundary between the premises of the respective parties is the township line established by Ingalls in 1872 commencing at the corner of sections 34, 35, 2 and 3, and running in a straight line westerly, which if continued would intersect the section corner common to sections 33, 34, 3 and 4 as established by Foreman in 1874, as shown upon plaintiffs' exhibits 1, 3 and 4. Judgment followed in favor of plaintiffs, quieting their title to the lands described in their complaint and awarding them damages in the sum of $4,692.85. From this judgment the defendants appeal on a bill of exceptions.

On this appeal appellants attack the judgment upon the ground that the findings of fact made by the trial court were not supported by the evidence. The grounds presented on the appeal may be stated as follows: (1) That the evidence is insufficient to support the finding as to the true location of the township or boundary line dividing the lands

of the respective parties; (2) that the evidence is insufficient to show an agreement between the parties establishing such boundary line, and (3) that the evidence is insufficient to show that the respondents acquired title to the land in dispute by adverse possession.

[1] The controversy arises over a strip of land approximately seven chains in width and a quarter-section in length. The dividing line claimed by respondents is the southern line of section 34 of township 2, and also the southern line of said township. This section line commences at a fir tree common to sections 34, 35, 2 and 3 and runs directly west to a post which is a common section corner of 33, 34, 3 and 4. The fir tree is the corner marked by Ingalls in his survey of 1872 and lies 6.87 chains south of the point which appellants claim to be the true corner post. The post on the west at 33, 34, 3 and 4 is the common corner accepted by both Ingalls and Foreman and extends 6.93 chains south of the point from which a straight line would pass if extended west from the post at 34, 35, 2 and 3, as claimed by appellants. A diagram is attached to page 5 of appellants' brief, but it is full of inaccuracies and is of little assistance. The case depends upon the evidence in the record and from an examination of this we conclude that it is sufficient to support the finding of the trial court that the township and section line is the line commencing at the so-called Ingalls fir tree corner, running thence westerly to the agreed Foreman corner, and being approximately seven chains south of the line for which the appellants contend. It is true that there is some conflict in the evidence, but the witnesses A. J. Logan, French, Shaw, and Sanford all accepted the Ingalls corner, and the field-notes of both Ingalls and Foreman went to prove that the line actually laid out upon the ground by these surveys was the line which the trial court found to be the true line of division. Though it appeared from Foreman's field-notes that he failed to find the Ingalls fir tree corner because it had "probably been destroyed by recent fires," the notes do show that he found all the other points of identification along the southern line of section 34, including the quarter-section post and the meander posts on each side of the river. Ingalls surveyed from west to east, while Foreman, with the expressed intention of retracing Ingalls' old line, surveyed from east to west. It was impos-

sible for him to pass through these points of identification along the southern line of section 34 unless he accepted the corners established by Ingalls. The claim that he did not accept the Ingalls corner of 34, 35, 2 and 3 is based mainly upon the fact that this corner is out of line with the common corner of 35, 36, 1 and 2 to the east. One witness testifying for the appellants stated that he found a corner which appellants claim to be the true corner of 34, 35, 2 and 3, and that he saw scribe marks on a fir tree which he believed to be something like forty years old. From this testimony it is argued that this witness did in fact discover the so-called Foreman corner at a point 6.87 chains north of the so-called Ingalls corner, but it was later shown by the same witness, as well as by others, that the marks which he discovered were not those of Foreman but of a surveyor by the name of Shaw, who surveyed the land some twenty-four or twenty-five years later than Foreman's survey.

[2]    (2) Upon the issue of an agreement as to the boundary line, the evidence shows that a Mrs. Wilds and J. W. Logan, predecessors in interest of the parties in this action, were uncertain as to the true boundary line between their premises and that some time about 1875 or 1876 they had talked the matter over and had agreed upon the same line which respondents now insist is the true boundary line; that in accordance with this agreement they built a fence along a portion of the line, a part by each, running from the river to the timber line; that they thereafter farmed the land which was tillable up to the line as agreed upon and lived together in this agreement for a period of several years; that Mrs. Wilds' successor in interest sold her lands to one of the appellants herein and that they cut the timber up to the line which had theretofore been agreed upon; that this was done in the year 1898; that by reason of this cutting of the timber, the erection of the fence, the farming of the lowland and blazed marks through the timber, the line between the two parties' properties was clearly discernible and was accepted by all parties as the true dividing line for a period of more than forty years; that it was recognized and commonly referred to as the "Ingalls line"; that in fact it was not questioned until 1920, when one of the appellants entered upon the land which had theretofore been held and claimed by respondents and their predecessors and

cut and removed timber therefrom. It also appeared that during all this time the so-called Ingalls corner was a well-known and recognized corner, an "important corner," and was known to be the point from which the dividing line should start. It further appears that the fences which were erected by Mrs. Wilds and Logan were destroyed by water from the river and that they were subsequently repaired with the knowledge and consent of all parties.

Appellants insist that the element of uncertainty as to the true boundary which is necessary to invoke the rule of an "agreed boundary" is lacking, but it appears in the evidence that in the early days Mrs. Wilds, predecessor in interest of the appellants, and Logan, predecessor in interest of the respondents, had several conversations concerning the location of this line; that Logan at first was unable to locate the corner and asked Mrs. Wilds if she knew where it was to be found; that in response thereto she sent her son Nathan Sanford, a witness in this case, to the Ingalls corner with directions to him to point out such corner to Logan; that Mrs. Wilds and Logan had several conversations concerning the location of the line, some of which occurred down on the line near the river-bar, and that as a result of said conversations they determined that a fence which Logan had erected was below the line and they thereupon agreed to and did move the fence and put it upon the line between them; that Mrs. Wilds, being doubtful as to the location of a spring, had a special survey made in order to determine whether the spring was within the line of her property. There is sufficient here to sustain the finding of the trial court that the predecessors in interest of the parties hereto were uncertain as to the location of the true line between their properties and that, with the intent to establish such line, they agreed with each other that the boundary line between their respective properties should be the line commencing at the Ingalls corner and running west to the Foreman corner, as claimed by the respondents in this action. The "agreed" boundary rule is correctly stated in *Young* v. *Blakeman,* 153 Cal. 477, 481 [95 Pac. 888, 889], from which we quote: "When such owners, being uncertain of the true position of the boundary so described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce

in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy. of the agreed location, as it may appear by subsequent measurements.'' (See, also, *Loustalot* v. *McKeel,* 157 Cal. 634, 640 [108 Pac. 707].) [3] It will be seen from the foregoing that the rule may be invoked where the true boundary line is ''doubtful or uncertain.'' It is not necessary that there should be an actual dispute between the parties as to the location of the true line. This was held in *Price* v. *De Reyes,* 161 Cal. 484, 489 [119 Pac. 893]. In that case it was argued that the rule does not apply where the location of the boundary was merely uncertain, but that it must have been absolutely unascertainable and that there must have been an actual dispute between the parties as to its true location. But the supreme court held that the rule was not subject to such qualification. In the first place, that it was only where the true location was subsequently ascertained that actions of this nature arose which required the application of the rule, and that obviously the rule could not apply if the location was unascertainable. As to the second point, it was held that all the authorities agree that it was sufficient if the true location was uncertain and that it was not necessary that there should have been a dispute as to the boundary prior to the agreement as to the location.

[4] (3) From what has been said it follows that, if it were necessary for respondents to rely on their rights by adverse possession, sufficient evidence was received to support a finding quieting respondents' title upon that ground. It was shown that the true boundary line was marked upon the ground; that the parties built up to it and occupied the lands on each side; that the portion inclosed by the fence was farmed by the respective parties and that the portion thereof which was covered by timber was occupied and used for the ordinary use and in the ordinary way; that the respondents and their predecessors in interest had paid all taxes against said land from 1875 to the date of the judgment; and that appellants and their predecessors in interest, as owners of the land immediately adjoining on the south, never exercised any ownership and never asserted any claim

of right to the portion of the land north of the so-called Ingalls line at any time during the period from 1878 to 1920. But it was not necessary for the respondents to plead or prove title by adverse possession. Having shown that their predecessors in interest had agreed to and defined the boundary line between their respective properties and had occupied the premises in accordance with the agreement, the description in their respective patents carries title up to the agreed line, regardless of its accuracy. ''The division line when thus established attaches itself to the deeds of the respective parties, and simply defines, not adds to, the lands described in each deed, in accordance with the understanding of the parties, who are presumed to know best their lands.'' (*Sneed* v. *Osborn,* 25 Cal. 619, 630; *Price* v. *De Reyes,* 161 Cal. 484, 487 [119 Pac. 893].)

Judgment affirmed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 10, 1923, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 7, 1923.