Petitioners Edward C. Lewis and Bertha Johanna Lewis, hereinafter referred to as "petitioners," prayed the superior court to have their land, the east half of the southwest quarter of the northwest quarter of section 15, township 3 south, range 12 west, in Rancho *Page 788 
Santa Gertrudes in Los Angeles County, registered under the provisions of the so-called Torrens Land Title Law. (Stats. 1915, p. 1932.) In their answer defendants allege that they are the owners and entitled to the possession of the land lying on the north of petitioners' land; that defendant Grover W. Ball owns the land immediately adjoining petitioners' land and that the land of defendant Elmer E. Ball adjoins on the north the land of defendant Grover W. Ball; and that petitioners are claiming a strip of land 662.74 feet long east and west and 5 feet wide at its east end and 3.8 feet wide at its west end, off the south side of the land of defendant Grover W. Ball, and are endeavoring to have the north line of their land advanced northerly from the true line so as to include the strip.
The trial court gave judgment in favor of petitioners, awarding the strip to them, and ordering the land of petitioners registered, from which judgment defendants appeal.
The question involved in the appeal is whether the evidence supports the findings and judgment.
The evidence of the parties shows the following facts without material conflict:
Section 15 is a fractional section and the east and west boundary lines of the west half of the northwest quarter are more than 2,640 feet long. Ex-Governor Downey owned that land in and prior to 1867, and he subdivided it into two tracts which were designated as 40-acre tracts. He sold the south forty to a Mrs. Rice in 1867, and her brother, one McQuistion, bought the north forty about the same time. By mesne conveyances, petitioner Edward C. Lewis became the successor in interest of Mrs. Rice to the east half of the south forty, and defendant Grover W. Ball became the successor in interest of McQuistion to the north forty. Mrs. Rice occupied and cultivated the south forty and McQuistion the north forty for a number of years, beginning in 1868. When they purchased, the boundary line between the two forties was marked by stakes, and in 1869 Mrs. Rice and McQuistion agreed to further mark it by a fence of Osage orange trees, and McQuistion then planted the trees approximately parallel to and about six inches north of the boundary as marked by the stakes, planting them four or five feet apart. The trees grew to a height of 12 to 14 feet and their trunks to about three feet in diameter. The trees were *Page 789 
there as late as 1908, and at some time thereafter they were cut down, some of their stumps remaining until 1923, and a wire fence was built in their place. From 1869 to 1923 the owners of each forty cultivated their lands as close as practicable to the trees and fence. There never was any dispute as to the boundary prior to this action.
The strip of land in dispute lies next north of the agreed boundary line. A line drawn equidistant from the north and south boundaries of the east half of the northwest quarter of the section, dividing it into two equal parts, will lie at its west end about 4.40 feet north of the northwest corner of the strip in dispute, and 2.26 feet north of the northeast corner of the strip.
Petitioner Edward C. Lewis had the lands surveyed preparatory to this action and caused the surveyor to arbitrarily establish as the north line of his land the line which is the north line of the strip, but the line so established does not conform either to the boundary agreed upon by Mrs. Rice and McQuistion, or to a line which would divide the east half of the northwest quarter into two equal parts, or to any known monuments.
Fortunately the rules of law covering disputes of this character are well settled. A late decision upon the subject of agreed boundaries is found in Nusbickel v. Stevens Ranch Co.,187 Cal. 15 [200 P. 651], in which the rules were announced as follows: "When two adjoining owners of land being uncertain as to the true location of the boundary line between their contiguous land, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed, and acquiesce in such location for a period equal to the period of the statute of limitations, . . . such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location as it may appear by subsequent measurements (citing cases). The fact that the position of the dividing line could always have been determined by a correct measurement, or by survey, does not prevent there being an uncertainty, within the meaning of this rule, in the minds of the parties as to the position of the line on the ground. This condition exists in virtually every case in which the aid of the rule is sought. (Citing cases.) . . . The word `uncertainty' is used in the statements of the rule *Page 790 
in the decisions to convey the idea that at the time of the location of the division line neither of the coterminous owners knew the true position of the line on the ground. . . . Having agreed upon the line as the true line, and believing that it is, it follows that neither one would intend to claim any land beyond the line, unless he was dishonest in making the agreement." See, also, Howatt v. Humboldt Milling Co., 61 Cal.App. 333, 339 [214 P. 1009].
The decision in the case of Silva v. Azevedo, 178 Cal. 495, 499 [173 P. 929], cited in Nusbickel v. Stevens Ranch Co.,supra, was based upon facts very similar to the facts in this case, except that in that case it appeared that the line had been established by mistake in its location only six years before the discovery of the mistake, and that substantial improvements had been made by Azevedo on the tract in dispute. Azevedo had purchased a part of Silva's land, and they had employed a surveyor to locate the line dividing their holdings. The surveyor correctly surveyed their holdings but made a mistake in marking the dividing line on the ground, placing it 70 feet over on Silva's land. The parties built a fence on the marked line and occupied and improved their lands to the fence. The court held that as there was a continued acquiescence in the line so fixed and the occupation beyond the period of the statute of limitations, and improvements made in accordance with it, it would be manifest injustice to permit Silva to be ousted merely because he discovered by a new survey that the line was established in error; and "if the position of the line always remained to be ascertained by measurement alone, the result would be that it would not be a fixed boundary, but would be subject to change with every new measurement. Such uncertainty and instability in the title to land would be intolerable. (Young
v. Blakeman, 153 Cal. 477 [95 P. 888].)" The judgment of the lower court in favor of Silva was reversed.
[1] It does not appear from the record that when Mrs. Rice and McQuistion agreed upon the boundary line between their properties, that either of them knew the true line upon the ground. The agreement fixing the boundary line made by them, the predecessors of the parties to this action, and acquiesced in for 54 years before a dispute arose over the *Page 791 
boundary, binds the parties to this action as their successors. See Howatt v. Humboldt Milling Co., 61 Cal.App. 341
[214 P. 1009], and Raney v. Merritt, 73 Cal.App. 244, 250 [238 P. 767].
It would be unjust should we now permit petitioners to disturb the boundary line so established, and recognized and treated as the true boundary for so many years.
[2] Appellants also contend that as the line attempted to be established by petitioners' survey was arbitrarily established, the judgment confirming it cannot stand.
This contention is well taken. There is no evidence to support the attempted establishment of the line where laid. A judgment establishing a boundary arbitrarily selected must be reversed. (Staniford v. Trombly, 181 Cal. 372, 375 [186 P. 599].)
[3] The survey which petitioners caused to be made was incorrect, and it was of no value to defendants, and because thereof defendants had another survey made. Defendants should not be charged with any part of the cost of petitioners' survey.
This court concludes that the decree registering the land of petitioner Edward C. Lewis, and the strip of land in dispute, should be modified to adjudge: that defendant Grover W. Ball is the owner of the strip in dispute; that petitioner Edward C. Lewis is the owner of that part of the land claimed by him which lies south of the strip in dispute, viz.: south of the boundary line established by Mrs. Rice and McQuistion, which part alone should be registered; and that defendants shall recover their costs from petitioners. But no charge against defendants shall be included for any part of the expense of the survey which petitioners caused to be made, or for costs.
Before any modified decree shall be entered the trial court shall require petitioners to cause the northeast and northwest corners of their land, at the intersections of the boundary line, so established, with the east and west boundary lines of their land, to be marked by appropriate monuments of a permanent character.
If respondents shall, within 15 days after this opinion is filed, file in this court their remission consenting to the modifications of the decree which this court holds should be *Page 792 
made, and agreeing to so mark the northeast and northwest corners of their land, the decree shall be so modified, and as so modified shall be and stand affirmed, and when the corners are so marked, the trial court shall make its modified decree to conform thereto. Otherwise the decree shall be and stand reversed.
Appellants shall have judgment against respondents for the costs of this appeal.
Works, P.J., and Craig, J., concurred. *Page 793