[Civ. No. 8499. Third Dist. Apr. 21, 1955.]

CATHERINE WEEKS, as Executrix, etc., Respondent, v. ALVIN TADDEUCCI et al., Appellants.

Clarendon W. Anderson for Appellants.

Francis M. Passalacqua for Respondent.

SCHOTTKY, J.—Alessandrina Taddeucci commenced an action in ejectment against her son, Alvin Taddeucci, and his wife, Johanna Taddeucci, for possession of certain farm property in Sonoma County known as the "Home Ranch."

Defendants filed a cross-complaint in which it was alleged that on or about January, 1934, defendant Alvin Taddeucci and his father, Jacopo Taddeucci, entered into an oral agreement that said defendant would assume the management of said Home Ranch and that they would share the profits equally; that said defendant Alvin Taddeucci performed all the terms of said oral agreement from January, 1934, to November, 1942, when said defendant entered the military service; that upon said defendant's discharge from the military service he resumed his duties under said oral agreement of 1934; that on or about May, 1946, said father, Jacopo Taddeucci, agreed orally to execute a written agreement con-

firming all the provisions of said oral agreement and also providing "that said Jacopo Taddeucci would devise and bequeath and transfer ownership and title of aforesaid real property and all appurtenances thereto belonging, and thereafter added, to said Alvin Taddeucci subject only to a life estate in Alessandrina Taddeucci if she survived said Jacopo Taddeucci and provided further that said Alvin Taddeucci would have the right to operate said properties during the life tenancy of said Alessandrina Taddeucci, and said written agreement to contain the further provision that said Alvin Taddeucci upon the death of Alessandrina Taddeucci, would pay to Walter Taddeucci, his brother, the sum of Two Thousand ($2000.00) Dollars; to Vivian Taddeucci, his sister, the sum of Fifteen Hundred ($1500.00) Dollars, and to Kathryn Weeks, his sister, the sum of Fifteen Hundred ($1500.00) Dollars." The cross-complaint alleged further that defendant Alvin Taddeucci continued to operate said properties under the terms of said oral agreement and also alleged that plaintiff, Alessandrina Taddeucci, agreed with defendant Alvin Taddeucci and the father, Jacopo Taddeucci, to be bound under said agreement which was to be executed in writing by Jacopo Taddeucci; that Jacopo Taddeucci died on March 25, 1947; and that in the performance of said agreement defendant expended various sums of money for labor and materials in making improvements. The prayer of the cross-complaint was that (1) "the court make its decree declaring that Alessandrina Taddeucci holds said real property and the appurtenances thereto belonging in trust for said Alvin Taddeucci," and (2) "that in the event the court finds that Alvin Taddeucci has no interest in the said real property that the court make its order that Alessandrina Taddeucci pay to said Alvin Taddeucci" certain sums for money expended by him.

The material allegations of the cross-complaint were denied and the action was tried before the court sitting without a jury. The trial court found contrary to the allegations of the cross-complaint, the substance of said findings being that there was no oral agreement entered into as alleged by the defendants that would obligate plaintiff to convey the real property to appellants or compel respondent to hold as trustee of a constructive trust for the benefit of the defendant Alvin Taddeucci; also, that Alvin Taddeucci's actions were not in reliance upon the oral agreement as alleged by him, but that his actions were done in the operation of the property on a

share crop basis and, therefore, recovery was denied as to his claim for monetary damages. In accordance with said findings judgment was entered that defendants had no right or interest in the property, that they take nothing on their crosscomplaint and that plaintiff recover possession of her property.

Defendants' motion for a new trial was denied and they have appealed from the judgment. During the pendency of this appeal Alessandrina Taddeucci died and the executrix of her estate was substituted as plaintiff and respondent.

In their opening brief appellants fail to state any specific contentions of error but the general purport of their argument is that the evidence does not support the judgment in favor of respondent and that "to deny the existence of a trust upon the property would not only be detrimental to Appellant but would undeniably result in the unjust enrichment of Respondent by permitting her to receive the benefits of Appellant's performance under the agreement." We shall hereinafter refer to appellant Alvin Taddeucci as appellant and to Alessandrina Taddeucci as respondent.

It appears from the record that in 1921 Jacopo Taddeucci and respondent acquired the realty which is the subject matter of this action, about 56 acres, known as the Home Ranch. It was paid for with community funds and consisted of uncultivated land, a stand of forest, ten acres of cherries and a few apple trees. Subsequent to the purchase respondent and her husband improved the ranch and planted additioal acreage. There are four children of Jacopo and Alessandrina Taddeucci, namely, Walter Taddeucci, Catherine Weeks, Vivian Taddeucci and Alvin Taddeucci, who is the youngest and the appellant herein. The family was supported and raised from the profits and earnings of the ranch, the children assisting their parents with the farm chores and housework. In 1933 or 1934 appellant, after working away from home, returned to live on the ranch, together with his parents and sister. Appellant assisted his father in the operation of the ranch from approximately 1934 to until 1942, for which he received 50 per cent of the profits. During this time appellant worked approximately two months each year in assisting his father in the operation of the ranch, which was done on a share basis. After appellant returned from service in the United States Army he received all the returns for the years 1946 and 1947. In 1948, 1949 and 1950 appellant again

operated the Home Ranch on a share basis, but only gave his mother a total of $830 rental for the entire three years.

Respondent, 82 years of age at the time of trial, testified that the reason appellant got all the profits of the ranch for 1946 and 1947 was that after he returned from the military service he constantly complained that while he was in service he had not earned any money and that the others had received all the benefits of the ranch, so his father told him that he could have the profits of the ranch for two years. Respondent knew of and was satisfied with this arrangement. Respondent's husband died in March of 1947. Respondent testified that during 1948, 1949 and 1950 appellant operated the ranch and was supposed to give her seven or eight hundred dollars a year. During this time (1948 through 1950) she supported herself from her own money and contributions by the other children, as appellant only gave her a total of $830. However, in 1951 respondent's grandson operated the ranch and she received $1,300, plus a portion of crops not yet sold. On December 21, 1950, at respondent's request, her attorney sent a letter to appellant asking him to vacate the premises. However, he refused to do so and told respondent that he would leave after he had collected everything from the 1950 crops, but he was still there at the time of the trial in March, 1952. Respondent testified that some years before appellant went into the military service her husband told her that the working agreement with appellant was that for working on the ranch he would receive one-half of the proceeds. During the war Walter, the oldest son, worked on the ranch and was paid for his services.

In 1924 respondent's husband executed a gift deed of this land to respondent and delivered it to her. It was recorded after her husband's death. She gave it to appellant, who took it to the recorder's office. A few years before his death respondent's husband told her that upon their death the property should go to all the children equally.

Vivian Taddeucci, a daughter, testified that she returned home in 1929 to live, because of her mother's health, as respondent had been ill during the past several years. Up to 1934 she thought that her father did all the work on the place. From 1934 to 1937, Walter helped in working the place. In 1937 she was present when her father loaned appellant money, which she thought to be about $600, to help him buy some farm equipment, as a tractor, disc, etc. Appellant testified that the amount borrowed from his father was $1,000 and

that he thought he had repaid it by the time he went into the Army. After this time Vivian saw appellant doing some tractor and spraying work on the Home Ranch. She knew that he was leasing and working other lands in 1937 and 1938, also that he performed work for others from 1939 to 1942, when he entered the military service. After appellant returned home from the Army, Vivian was present at a conversation at the dinner table when appellant appeared disgusted because others had been home making money while he was away, and her father told him that he could have the crops off the ranch for the next two years. In 1948 appellant married and converted the brooder house into a dwelling for himself and his wife; when asked by respondent what he was doing, he replied: "It's my business," and further stated that he would do as he pleased. Appellant told his sister Catherine that it was to be used as a dwelling until they could get their own place later on. Sometime after his father's death appellant endeavored to purchase the ranch from his mother, but respondent refused to sell; appellant then wanted to exert pressure upon her so that she would have to sell to him.

The only evidence in the record to support appellants' position was testimony given by appellant Alvin Taddeucci himself. He gave testimony tending to support the allegations of his cross-complaint and in appellants' brief the argument is apparently based entirely upon said appellant's testimony, the fact that Alvin's testimony was contradicted by his mother and sisters being completely ignored. It is abundantly clear from the record that there is ample evidentiary support for the court's finding that the arrangement between Alvin and his father was as testified to by respondent and the other witnesses for plaintiff, and that appellants failed to meet the burden of proof required of them to establish a constructive trust. Appellants concede that the quantum of proof necessary to establish the existence of trust must be clear and convincing.

Appellants cite section 50 of Restatement of Trusts which reads:

"Although a trust of an interest in land is orally declared and no memorandum is signed, the trust is enforceable if, with the consent of the trustee, the beneficiary as such enters into possession of the land or makes valuable improvements thereon or irrevocably changes his position in reliance upon the trust."

There can be no question that if the trial court had believed

the testimony of appellant Alvin Taddeucci and had found in accordance therewith such finding would be sustained by the record. But there was a clear conflict in the evidence and the court resolved that conflict in favor of respondent. There was no dispute as to the legal principles involved and the case resolved itself into a determination of the factual issues. Issues of fact are determined in the trial court and not in an appellate tribunal. The trial court having decided upon sufficient evidence in favor of respondent we must uphold the judgment.

The appeal in the instant case is so lacking in merit that we are constrained to state that, if it were not for the apparent earnestness of counsel for appellants, we would regard it as frivolous.

The judgment is affirmed.

Van Dyke, P. J., and Finley, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.