[Civ. No. 5409.   Fourth Dist.   Sept. 7, 1956.]

HENRY WOOD SHELTON et al., Respondents, v. JEANIE MALETTE et al., Appellants.

W. E. Starke for Appellants.

Sloane & Fisher for Respondents.

MUSSELL, J.—This is an action to determine boundaries and to quiet title. On March 10, 1922, one Jessie M. Lockhart conveyed Lots 3, 5, 6, 7 and 8, in Section 7, Township 14, Range 4 East, S.B.M., on Cuyamaca Mountain in San Diego County, to one A. B. Tahar. In October, 1922, Tahar obtained a survey of this property by a licensed surveyor, Percy L. Day, and a map of the property involved was prepared by

him for Tahar's use. On or about November 14, 1922, A. B. Tahar conveyed to one George S. Gay said Lots 7 and 8, according to the said survey made by Percy L. Day in October, 1922, and all of said Lots 3 and 6 lying north of the meandering creek bed running through said lots, described by metes and bounds. In 1923 Tahar conveyed to George A. Malette a portion of Lot 6 of said land which was described in the deed as commencing at a point on the south line of Lot 6 where a small creek intersects same; thence north along said creek to its intersection with a road north of Rocky Hill; thence west along said road to the west line of said Lot 6; thence south along said west line to its intersection with the south line of said lot marked by a post in a stone mound; thence along said south line to the point of beginning.

In 1928 the plaintiffs became acquainted with A. B. Tahar and visited his mountain property. The Sheltons and Tahar became very close friends and in 1929, when the Sheltons were on the Tahar property, Tahar showed them the Day survey map and told them that they were to have Lot 3 as shown thereon. He pointed out the boundary of this lot to the Sheltons and directed their attention to a barbed wire fence which he said was the boundary line between the property they were to have and the property which he had theretofore deeded to George Malette. The Sheltons paid $1,800 to Tahar and he agreed to execute his will leaving them the property. They built a cabin on it, ran a pipe line to a spring and occupied the property pointed out to them by Tahar actually, notoriously and uninterruptedly until the spring of 1951, at which time the defendants caused a fence to be erected approximately 450 feet west of and parallel to the fence pointed out to the Sheltons by Tahar as being the boundary line between his property and that theretofore conveyed to Malette. The area between these two fences is the property in dispute here and is shown on a map in evidence prepared by Daniels, Brown and Hall (Defendants' Exhibit I).

In 1936, Section 7, Township 14 South, Range 4 East, S.B.M., was surveyed by one Dupree Averill, a United States surveyor, and he prepared a map (Plaintiffs' Exhibit 5) in which the boundary line between Lots 3 and 6 did not correspond to the boundary line shown on the Day map and pointed out to the Sheltons by Tahar.

On July 21, 1931, Tahar executed his will in which he left to George A. Malette "My remaining interest in Lots Five (5) and Six (6), Section Seven (7), Township Fourteen (14)

South, Range Four (4) East, S.B.M.'' The will further provided as follows:

''I have heretofore arranged for thirty-seven (37) acres of my Cuyamaca property to go to Henry Wood Shelton and Dorothy Shelton, provided my death occurs within ten (10) years from date hereof and in that event, I leave any interest therein to said Henry Wood Shelton and Dorothy Shelton and their children, without the right of disposition, until the death of all said Shelton family, as a life estate, upon their death said property to be disposed by will of last survivor of those mentioned herein. This is in cancellation of my indebtedness to them. The said property is to be subject to the Agreement entered into by and between George Gay, George A. Malette and myself.''

Tahar died in 1938 and letters testamentary were issued to George A. Malette on May 27 of that year. On January 27, 1939, an order for partial distribution was made in the estate of Tahar distributing ''Lot 3, Section 7, Township 14 S, R 4E, SBM, consisting of 37 acres, recorded in County Recorders office of San Diego, California, to Henry Wood Shelton and Dorothy Shelton. Lots 5 and 6, Section 7, Township 14 S, R 4 E, SBM, as recorded in County Recorders office, San Diego, California, to George A. Malette.''

In the trial herein it was stipulated and found by the court as follows:

''Upon trial defendants expressly disclaimed any right, title or interest in lands in Section 7, Township 14 South, Range 4 East, SBM, lying westerly of such division fence, until January 27, 1939, and confined their claims to those which arose under Order for Partial Distribution on said date in the Matter of the Estate of A. B. Tahar, deceased, Probate No. 25535 in the Superior Court of San Diego County, California.''

Plaintiff Henry Shelton testified that he and his wife paid taxes on their property first in 1931 and 1932 to Tahar and later to George Malette and finally they paid ''direct''; that in 1929 Tahar pointed out to him and to his wife the boundary of lot three, both as shown on the Day map and on the ground, and told them that the property which he was showing them was what they were to have; that Tahar pointed out to them the barbed wire fence and stated that that was the east boundary line of their property; that remnants of this fence were still on the property at the time of trial; that George Malette died June 6, 1949, and that during his lifetime he made no

assertion of any right to change the said boundary line fence and acquiesced in it as the true boundary line between his property and that of the plaintiffs.

The trial court found, in substance, that all of the allegations of the plaintiffs' complaint were true; that defendants confined their claims to those which arose under the said order of partial distribution; that the possession of plaintiff of the disputed property was actual, notorious, uninterrupted adverse possession and exclusive until the spring of 1951 when defendants caused the fence to be erected some 450 feet west and parallel to the fence line pointed out to the Sheltons by Tahar as the east boundary line of their property; that during all of such period plaintiffs paid state and county taxes assessed against lot three with the exception of a small area in the northeast corner thereof; that on or about December 13, 1929, plaintiffs entered into an oral agreement with A. B. Tahar in which Tahar, in consideration of the payment to him of $1,800, promised and agreed to execute his will conveying lot three to them, including the area here in dispute. These findings are supported by substantial evidence and cannot be here disturbed

■ The true location of the survey of a tract of land is a question of fact and in boundary disputes, monuments control over courses and distances and where the circumstances warrant it, fences have been considered as monuments. (*Rodgers* v. *Roseville Gold Dredging Co.,* 135 Cal.App.2d 6 [286 P.2d 536].)

In 8 California Jurisprudence 2d 763-767 it is said that to establish an agreed boundary line there must be an actual designation of the line upon the ground and occupation in accordance therewith. ■ To make the agreement binding, occupation in accordance with the line so fixed must be acquiesced in by the parties for a period equal to that fixed by the statute of limitations, or for such a length of time that the parties ought not to be allowed to deny its correctness. An agreed boundary line must be accepted as the true line, regardless of its accuracy as shown by subsequent measurements. ■ In applying the doctrine of agreed boundaries, it is not the theory of the law that there has been a conveyance of land from one coterminous owner to the other, but rather, that they have agreed between themselves as to the land which they respectively own under circumstances which are binding upon both of them and their privies. ■ Such an agreement is conclusive of the correctness of the line and a

fence may establish or mark the true boundary line between adjoining land owners and constitute an agreed boundary, when it is erected or maintained in circumstances rendering applicable the doctrine of agreed boundaries.

In *Mello* v. *Weaver*, 36 Cal.2d 456, 460 [224 P.2d 691], it is held that an agreement to locate a boundary line need not be express, but it may be implied from long acquiescence; that the implied agreement must have been based on a doubtful boundary line; that a dispute or controversy is not essential but it may be evidence of the existence of a doubt or uncertainty; that it is not required that the uncertainty should appear from the deed or from an attempt to make an accurate survey from the calls in the deed; that a doubt may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances surrounding the parties at the time when the agreement is deemed to have been made, and if in good faith the parties resolve their doubt by the practical location of the common boundary, it will be considered the boundary called for by the deed.

The evidence, considered in the light of the rules stated herein, is sufficient to support the finding of the trial court that Tahar and Malette, for many years, recognized the barbed wire fence pointed out to Shelton as the true and common boundary line between Lot 3 and Lot 6 and the conclusion of the trial court that plaintiffs are the owners of the disputed area is supported by the record.

There is also substantial evidence to support the trial court's finding that plaintiffs paid Tahar $1,800 for which he promised to execute a will leaving the disputed property to them. ■ Such a promise is enforceable. (*Brown* v. *Superior Court*, 34 Cal.2d 559, 560 [212 P.2d 878].) Plaintiffs, as intended legatees, are entitled to enforce their rights under the contract with Tahar. (*Daniels* v. *Bridges*, 123 Cal. App.2d 585, 590 [267 P.2d 343].) ■ As is said in *Weeks* v. *Taddeucci*, 132 Cal.App.2d 491, 495 [282 P.2d 586], quoting from 50 Restatement of Trusts:

" 'Although a trust of an interest in land is orally declared and no memorandum is signed, the trust is enforceable if, with the consent of the trustee, the beneficiary as such enters into possession of the land or makes valuable improvements thereon or irrevocably changes his position in reliance upon the trust.' "

The evidence further shows that plaintiffs had possession of the disputed area, which possession was actual, notorious,

uninterrupted and exclusive from 1929 to 1951, at which time defendants erected a fence west of the common boundary line between Lots 3 and 6. ██ As is said in *Klein* v. *Caswell,* 88 Cal.App.2d 774, 779 [199 P.2d 689]:

"The possession required by the statutes and by the decisions is one that must be so open, notorious and continuous as to give notice to others that it is hostile to the record owner and must be such as to indicate a claim of right, at least to the extent of putting a prudent man upon inquiry. ' "It must, in other words, be an open, unequivocal, actual possession—notorious, apparent, uninterrupted, and exclusive—carrying with it marks and evidence of ownership, which apply in ordinary cases to the possession of real property." ' (*Lofstad* v. *Murasky,* 152 Cal. 64 [91 P. 1008].)"

In the instant case the evidence was sufficient to constitute adverse possession under the statute.

Appellants argue that all statements attributed to A. B. Tahar as well as the so-called "Day" survey should not have been admitted and that all of these statements attributed to Tahar were self-serving declarations of a deceased person intending to enlarge his holdings. We are not in accord with these contentions. The declarations of Tahar were all against his interest as the original owner of the land west of the old fence and they confirm the reduction of his holdings as claimed by the Sheltons. ██ In *Sharp* v. *Blankenship,* 79 Cal. 411, 413 [21 P. 842], it was held that in case of a disputed boundary line which is in doubt, the declarations of a grantor, at or before the time of the sale and conveyance, are admissible against both him and the parties claiming under him. See also section 1853 of the Code of Civil Procedure.

The judgment is affirmed.

Griffin, Acting P. J., and Burch, J. pro tem.,* concurred.

A petition for a rehearing was denied September 27, 1956, and appellants' petition for a hearing by the Supreme Court was denied October 31, 1956.

---

*Assigned by Chairman of Judicial Council.