[Civ. No. 10477. Third Dist. Jan. 10, 1963.]

LLOYD C. STEELE et al., Plaintiffs and Respondents, v. J. D. SHULER et al., Defendants and Appellants.

Robert E. Laughlin for Defendants and Appellants.

Darrell Glahn for Plaintiffs and Respondents.

PIERCE, P. J.—This is a boundary dispute involving a line which is the north line of plaintiffs' property, the south line of defendants' property, which adjoins the Steeles' on the north. The area involved in the dispute constitutes a frontage along a county road of approximately 58 feet, with a depth of 440 feet more or less. The trial court quieted the title of plaintiffs Steele, denying the claims of the Shulers expressed in a cross-complaint. The Shulers appeal and urge an insufficiency of evidence to support the court's finding. Appellants' contention centers upon a blazed tree which, it is asserted, was a "witness" tree marking a boundary line, agreed upon or acquiesced in, although concededly not the true boundary if the calls in the description of the Shulers' original deed are followed.

Effectually both parties claim under a common grantor,

Leigh.[1] (As regards Steele's deed, Leigh conveyed to one Germany who conveyed over to Steele on the same day using the same description.)

■ Steele bought and obtained title in 1951. The circumstances: He wanted a homesite on which to retire and was shown property in section 24 along and to the west of a county road running (slightly) diagonally northwesterly and southeasterly through the section. The country was mountainous, with a stand of timber, and the land was unsurveyed. Steele's requirements were: A parcel with a frontage along the road of 547 feet with a depth running to the west section line and a south line parallel to and 500 feet north of the south section line.

The description in the deed was by metes and bounds. Its point of beginning was a point on the west section line of section 24, 500 feet north of the southwest corner of the section. The first call was a line running east, parallel to the south section line, a distance of "720.00 feet more or less, *to the center of the Magalia-Stirling City Highway.*" The second call was northerly along said center line of said road a distance of 547 feet. The third call was a line running west and parallel with the south section line a distance of 466 feet, more or less, to the west line of said section. The fourth call ran south along said west line to the point of beginning.

When a survey was run two years later it was found that the distances between the west line of section 24 and the center line of the road were substantially less than had been estimated. The south boundary instead of being a line "720.00 feet more or less" was 595 feet (or 125 feet short). The north boundary was 440 feet instead of "466.00 feet, more or less" (a shortage of 26 feet).

These shortages are unimportant to this controversy since the east-west boundaries are not involved. ■ The rule to determine intent where such inconsistencies are involved is: "When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement . . . of lines . . . the boundaries or monuments are paramount." (Code Civ. Proc., § 2077, subd. 2; *Shelton* v. *Malette*, 144 Cal.

---

[1]Plaintiffs are Lloyd C. Steele and Anna E. Steele, husband and wife, defendants are J. D. Shuler and Ruth H. Shuler, husband and wife. Their common grantor is Clara J. Holmes who, however, held title as Clara J. Leigh. Counsel in their briefs refer to the parties as "Steele" and "Shuler" and to the grantor as "Leigh." We will, for convenience, adopt the same designations.

App.2d 370, 374 [301 P.2d 18].) Here there is no question that the parties intended the south and north lines of Steele's property to run from the section line on the west to the center line of the road; also it is clear that the south line was intended to be parallel to and 500 feet north of the south section line. The record shows that said south section line had been surveyed. And the description, with the aid of the rule of interpretation quoted above, could be located on the ground with certainty. As one of the witnesses at the trial, a title expert, testified the description was one that "could be placed in only one spot on the face of the earth."

Leigh had sold a parcel to the north to Shuler two years before the Steele purchase. The description in the Shuler deed was as follows: "Beginning at a point 1047 feet North of the Southwest Quarter Section Corner of Section 24, Township 23 North, Range 3 East M.D.B.& M., thence East a distance of 384 feet; thence North 150 feet; thence West 384 feet; thence South 150 feet to point of beginning."

It will be noted that this description does not state terminal points. It will also be noted that since its south boundary lies 1047 feet north of the south section line there could be no possible overlap between the Steele and Shuler properties so far as the recorded deed descriptions are concerned.

Testimony was produced by Shuler that when he bought from Leigh he and the grantor went onto the ground; Shuler selected the site he wanted; and the parties then and there fixed the southeast corner by cutting a blaze on a witness tree at the edge of the county road. He also testified that after Steele purchased he, Shuler, showed him the blazed tree and indicated the south line running due west therefrom. Steele denied this and testified that Shuler had indicated that his south line was along some logs which Shuler had placed 18 or 20 feet to the north. He testified further that Germany had told him that the southwest corner of Shuler's property was at Shuler's gate. There was evidence produced by Steele disputing the *fact* that the blaze in the so-called "witness" tree was cut when Shuler testified it had been cut (in 1950). Steele produced a tree expert whose opinion would justify a finding that the blaze had not been cut until 1953. There was no reference to the blazed tree in the description in the original deed. On March 12, 1953, an amended deed from Leigh (through Holmes) to Shuler added a "more detailed" description. Again no reference is made to the now claimed blazed tree. The point of beginning in said amended deed is

still referred to as 1047 feet north of the southwest corner of the section with the south line running due east therefrom to the center line of the road.

 Shuler after the purchase had gone onto the property, had cleared it of brush and had built a residence and outbuildings. The only improvement thereon at the time of Steele's purchase lying within the disputed area was a small roughly-constructed woodshed 6 feet by 8 feet in size, located 18 or 20 feet north of the south line as now claimed by Shuler. A fence along the road did not extend to the blazed tree. After Steele had bought his parcel, Shuler constructed a garage on the land now in dispute. Steele told him at the time that he thought that the garage was located on his (Steele's) side of the line. However, he did nothing to prevent its continued use.

In 1953 a survey was made. It was made at the suggestion of Hook, owner of the property adjoining Steele's on the south. Hook desired particularly to establish the west line of section 24. The survey was the joint undertaking of Hook, Steele and Shuler. It fixed on the ground the southwest corner of section 24; also its south and west lines. (The south line, as stated above, had been surveyed before either of these parties bought and its monuments had been established.) By measurement from said southwest corner it was possible to establish the north line of the Steele property as described in his deed; also the south line of Shuler's property according to his original deed (located from the point of beginning 1047 feet north of said southwest corner). Shuler's south line thus determined was 27.29 feet north of Steele's north line.

In the March 12, 1953 deed obtained by Shuler, the description, although indefinite, could be construed as intending to convey any land lying north of the Steele north line. Shuler, however, also obtained another deed from Leigh (signed by her husband Holmes as her "attorney in fact") recorded on October 2, 1953, the description of which contained a point of beginning on the west line of section 24, 965.92 feet north of the southwest corner of said section. This description runs the south line, parallel to the south line of the section, to the center line of the road. It is this description which causes the overlap in dispute here. For six years neither party made any move significant to this controversy (excepting that Shuler continued to occupy and have access to the garage located on the now-disputed land). Then in December 1959 Shuler extended the front fence of his property to the blazed tree and ran two strands of barbed wire in a westerly direction

from the tree to the west property line. These acts by Shuler were followed by (and precipitated) this action filed by Steele to quiet title to the disputed area. Shuler cross-complained to quiet his title and also claimed title by adverse possession.

After trial the court filed a memorandum decision. In it the court pointed out that although there was substantial evidence to support the contention that a blaze had been put in the tree "no action was taken by Shuler or by any of the parties concerned to use the pine tree as a monument. It was not referred to at any time in any instrument of record; nor were any measurements used which would coincide with the location of this tree; nor was any fence or barrier erected which would put another person on notice until December, 1959." This decision also stated: "Steele at the time of his purchase . . . believed he was purchasing a pracel of land having a frontage along the center line of the county road of 547 feet; that in reliance upon such belief Steele completed his purchase and constructed his home and carport in such a manner that deprivation of the northerly 58 feet of his lot (being the approximate amount of the overlap which would be created under the description used in defendant's cross-complaint) would substantially and materially impair Steele's use of his property and the improvement constructed thereon."[2]

When, after having written the foregoing memorandum decision, the court made its findings, it did not find as a fact that the so-called "witness" tree had been blazed in 1950. Nor did the court find that, if the tree had been then blazed, it was shown to Steele when the latter bought. Nor did it find, if it was there and if it was so shown, that it was agreed by the parties to fix the boundary separating the two properties.

A line agreed upon by adjoining owners, even though it is not the true line according to the respective deed descriptions, may become the boundary. (*Loustalot* v. *McKeel,* 157 Cal. 634, 641 [108 P. 707]; *Spear* v. *Smith,* 161 Cal.App. 2d 744, 748 [327 P.2d 36].) But "to establish an agreed boundary line there must be an actual designation of the line upon the ground and occupation in accordance therewith. To make the agreement binding, occupation in ac-

[2]At Shuler's request a stipulation was entered into between the parties that the court might view the premises. From the court's statement quoted above it may be presumed that the judge did make this inspection, although the record is silent as to this. In any event appellant does not point to anything in the record contradicting the statement in the decision that deprivation of the disputed strip would materially impair Steele's use of his property.

cordance with the line so fixed must be acquiesced in by the parties for a period equal to that fixed by the statute of limitations, or for such a length of time that the parties ought not to be allowed to deny its correctness." (*Shelton* v. *Malette, supra,* 144 Cal.App.2d 370, 374.)

Shuler, under the facts here, does not bring himself within the foregoing conditions necessary to the establishment of boundary agreed upon or acquiesced in. Even as between Shuler and the original grantor, Leigh, there is no certainty that an agreement existed. ■ True, the trial court in its memorandum decision stated that there was substantial evidence to support the contention that a blaze had been put on the tree when Leigh deeded to Shuler in 1950, but, as stated above, no finding of fact was made of this (and actually the ultimate finding of fact is to the contrary). It is the findings filed and not the court's preceding memorandum opinion which control. ■ " 'While an opinion of the judge of the trial court will aid the appellate court in ascertaining the process by which a judgment has been reached it will not be considered in determining whether or not the verdict of the jury or the findings of the court are supported by the evidence.' " (*Ciriniconi* v. *Green,* 175 Cal.App.2d 812, 815 [346 P.2d 867].) ■ Here, as stated above, there was substantial evidence to support the ultimate finding that the tree had *not* been *blazed* until 1953, a year after Steele had bought his lands.

■ Moreover, it is not clear, even if the blazing of the tree did occur in 1950, that such act either was intended, or had the legal consequence, to constitute the fixing of the south boundary of Shuler's lands. The deed description, as we have seen, makes no reference to the blazed tree as a monument. Blazing of the tree could have been a mere indication by the parties as to where they thought the boundary line ran but not to fix the boundary should the line as shown by the description prove to be elsewhere. Under such facts the line incorrectly located does not become the fixed boundary. (*Meacci* v. *Kochergen,* 141 Cal.App.2d 207, 212 [296 P.2d 573] ; *Pra* v. *Bradshaw,* 121 Cal.App.2d 267, 269 [263 P.2d 52] ; *Pedersen* v. *Reynolds,* 31 Cal.App.2d 18, 28 [87 P.2d 51].)

■ And even had the tree been blazed in 1950, and even had Shuler and Leigh then intended this act to fix the boundary, it would still not necessarily have bound Steele.

The learned trial judge, as we have seen, stated in his memorandum decision that nothing had been done to put a subsequent purchaser on notice of the boundary line now contended for and he also stated that Steele believed he was purchasing a 547-foot frontage on the highway. There was nothing in the deed from Leigh to Shuler which was of record when Steele bought to indicate any overlap of the common boundary. On the contrary, it showed they were not even conterminus owners. Shuler's deed showed his south line to be 1047 feet north of the south section line, while Steele's deed established his north line approximately 1019.71 feet north of said section line. (And said south line was a fixed, surveyed line.) No portion of the disputed strip was occupied except by a garage and woodshed (to be discussed *infra*). ▮ Appellant has cited the rule that "[i]f a disputed boundary line is agreed upon and acquiesced in by the parties, it is binding upon all parties to the agreement and their successors in interest." (8 Cal.Jur.2d 766, 767; *Needham* v. *Collamer*, 94 Cal.App.2d 609 [211 P.2d 308].) But this rule must be applied and considered in connection with another rule that a bona fide purchaser for value and without notice is entitled to protection against "undisclosed rights and titles." (50 Cal.Jur.2d 444; *Bernhard* v. *Wall*, 184 Cal. 612, 625 [194 P. 1040]; Civ. Code, § 1214.)

A reading of the cases relied upon by appellant, *Sharp* v. *Blankenship*, 79 Cal. 411 [21 P. 842], *Needham* v. *Collamer, supra, Togni* v. *Slocomb*, 12 Cal.App. 733 [108 P. 723], *Howatt* v. *Humboldt Min. Co.*, 61 Cal.App. 333 [214 P. 1009], *Board of Trustees* v. *Miller*, 54 Cal.App. 102 [201 P. 952], and *Nebel* v. *Guyer*, 99 Cal.App.2d 30 [221 P.2d 337], will disclose that all are distinguishable by the principles enunciated above. *Shelton* v. *Mallette, supra,* 144 Cal.App.2d 370, is authority against appellant.

▮ The evidence, therefore, is sufficient to sustain the findings and judgment of the trial court that respondents Steele, husband and wife, are the owners in fee of the disputed parcel as described in the judgment; and we so hold. This does not dispose of the case entirely.

In its memorandum decision the court stated: "The Court finds that Shuler has been in possession since about 1951 of a small shed about 6 by 8 feet square located near Steele's northerly boundary, together with the right of ingress and egress thereto. The Court further finds that Shuler has been in possession since about 1953, or the forepart of 1954,

of a building used by Shuler as a garage, together with the driveway thereto, and together with the right to enter and go freely over and upon said driveway and garage.''

When formal findings were prepared and filed no reference was made to the earlier opinion.[3] Under the rule expressed above that formal findings and judgment cannot be superseded by an informal memorandum of opinion, we are powerless to substitute that which the court indicated it was going to decide for that which it did decide—if there is any substantial evidence to support the findings actually made.

 As regards the shed 6 feet by 8 feet in size it is such an insubstantial structure that we think under the maxim de minimis non curat lex its existence should not be considered by a court of equity as achieving the status of an easement, particularly where its value to Shuler cannot be much and the nuisance to Sheele by the servitude thus created on his lands for its continued existence would be great. The evidence in the record therefore justifies its exclusion by the trial court.

 The garage with its driveway is another matter. The evidence is without conflict that it was constructed by Shuler under a claim of right and that he had been in open, notorious and hostile possession thereof for a period of more than five years. It is a substantial structure. Its continued use is important to Shuler. He therefore has an exclusive and perpetual right and easement over Steele's lands by prescription to the garage with ingress thereto and egress therefrom over the existing driveway. The evidence does not substantiate a contrary finding. (2 Witkin, Summary of California Law, § 190, p. 1928.)

The ground upon which the garage is located and the exact location of the driveway should be accurately described. This can better be accomplished in the trial court.

The judgment is reversed and the cause is remanded with

---

[3]The court's original memorandum opinion entitled ''decision'' was filed May 24, 1960. In this ''decision'' the court had expressed its opinion that findings of fact as quoted above would support a further finding that Steele's action pro tanto was barred by the statute of limitations but that such bar had not been pleaded. And the court indicated that it would permit an amendment to conform to proof. Shuler did not elect to amend. Instead on June 17, 1960 he filed a ''Request for Reconsideration'' by the court of the ''decision'' of May 24, 1960. This was denied. Formal findings were received July 29, 1960. No objection thereto as presented was made and they were signed August 12, 1960 and filed August 16, 1960.

directions to the trial court (1) to take such further proceedings as may be necessary to determine the description of the ground on which said garage and driveway are located, and thereafter (2) to enter judgment for plaintiffs as in the original judgment, save and except that the plaintiffs' title to the land in said judgment described shall be subject to a perpetual right and easement in defendants to maintain and use the garage and driveway in accordance with the terms hereinabove expressed. This court determines that the interests of justice require that costs on appeal be, and they are hereby, awarded to respondents.

Schottky, J., and Van Dyke, J.,* concurred.

A petition for a rehearing was denied January 28, 1963.

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.