[No. 14916.   Department Two. — February 8, 1893.]

MARY A. McDONALD, Appellant, *v.* H. L. DREW et al., Respondents.

Prescription — Adverse Possession — Division Fence — Payment of Taxes. — Where the division fence between coterminous owners of land was so located as to place a strip of land belonging to one of the coterminous owners upon the side of the other coterminous owner, and the fence so remained for a period of more than five years, but the lots were assessed for taxes yearly to each owner simply by reference to their number, without mention of the fence, or reference thereto, and paid by each owner as thus assessed, the possession of the owner on whose site the strip of land was located was not adverse as to such strip, and he

could not acquire a prescriptive title thereto for want of payment of all taxes assessed upon the strip of land during the five years of the alleged adverse possession.

APPEAL from a judgment of the Superior Court of San Bernardino County.

The facts are stated in the opinion.

*Rolfe & Freeman*, and *Paris & Fox*, for Appellant.

*Goodcell & Leonard*, for Respondents.

VANCLIEF, C. — Action in the nature of ejectment to recover possession of a narrow strip of land, about eighteen inches wide and one hundred feet in length, being part of lot No. 4, block 20, of the city of San Bernardino, the east side of which strip adjoins the east boundary line of said lot.

The defendant pleaded title by prescription through an adverse possession during a period of five years.

The court found the facts as follows:—

"For the purpose of this action, the following are stipulated as facts: —

"1. That at the time of the commencement of this action the plaintiff was, and for twenty years next prior thereto she and her grantors had been, the owners of lot 4, in block 20, of the city of San Bernardino, the land described in the complaint, except in so far as such ownership may have been impaired by adverse possession of the defendants and their grantors as to the strip of land described and claimed in the answer.

"2. That during all of said times the plaintiff and her grantors have been in the actual and exclusive possession of said lot 4 as owners, except in so far as such possession may have been ousted or withheld by the defendants and their grantors as to said strip.

"3. That J. W. Satterwhite was such owner and possessor at the time of the construction of the fence mentioned in the answer, and referred to as a division fence, and the plaintiff's title is derived through him.

"4. That during all of said times the defendants and their grantors were the owners of the west half of lot 7, in said block 20, lying east of adjoining said lot 4.

"5. That at the time of the construction of the fence mentioned, Byron Waters was the owner of the said west half of lot 7, and in the actual possession thereof, and the defendants' title is derived through him, but this does not admit any possession or right of possession as to said strip of land.

"6. That during all of said times the said lot 4 has been assessed to the plaintiff and her grantors, described simply as lot 4 in said block 20, without mention of said fence or reference thereto, and the plaintiff and her grantors have paid all taxes upon such assessments.

"7. That during all said times the said west one half of lot 7 has been assessed to the defendants and their grantors simply as to the west one half of lot 7 of said block, without mention of said fence, or reference thereto, and the defendants and their grantors have paid all taxes upon such assessments.

"Rolfe & Freeman, and
Paris & Fox,

For Plaintiff.

Goodcell & Leonard,
Attorneys for Defendants."

And in addition to said stipulation, the court finds the following facts from the evidence: —

"That the east line of lot 4, block 20, of the city of San Bernardino, referred to in the findings and the aforesaid stipulation, commences at a point on Court Street, in said city, twenty-two inches west from the southwest corner of the brick building on the north side of said Court Street known as the 'Courier office,' running thence due north about 130 feet to the northeast corner of said lot 4, and the same line constitutes the west line of lot 7 of said block.

"9. That ever since the spring of the year 1881, being more than five years before the commencement of this action, the defendants and their grantors and predeces-

sors in interest were in the actual, uninterrupted, open, and exclusive possession of the strip of land along and upon the east side of said lot 4, referred to in the complaint, said strip being about one foot and a half wide at the south end, and extending north one hundred feet from the north side of said Court Street, and gradually narrowing northward a few inches, to wit, to about one foot in width at the north end of said one hundred feet, such possession being under claim as of right, and adverse to plaintiff and her predecessors in interest, and all the world, except as such adverse possession may be affected by the non-payment of taxes by the defendants, or their predecessors, on any of said lot 4 as shown by the aforesaid stipulation."

Upon the facts found, the court adjudged that the defendants were the owners of the land in question.

Plaintiff brings this appeal from the judgment, upon the judgment roll, and contends that upon the findings of fact the judgment should have been in her favor. And so it appears to me.

The controversy is reduced to the question of law as to whether the possession of the defendants could have been adverse without payment by them of all taxes which had been levied and assessed upon the land in question during the five years' period of the alleged adverse possession, as required by section 325 of the Code of Civil Procedure.

This question has been answered negatively by this court in several cases.  (*Webb* v. *Clark*, 65 Cal. 56; *Ross* v. *Evans*, 65 Cal. 439; *McNoble* v. *Justiniano*, 70 Cal. 395. See also *Allen* v. *Reed*, 51 Cal. 362.)  And as all the arguments urged here by counsel for respondents seem to have been considered and answered in the cases cited, it is unnecessary to reconsider them on this appeal.

I think the judgment should be reversed, and that the lower court be directed to render judgment on the findings of fact in favor of the plaintiff.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion, the judgment is reversed, and the lower court is directed to render judgment on the findings of fact in favor of plaintiff.

DE HAVEN, J., FITZGERALD, J.

McFARLAND, J., concurring. — I concur in the judgment because it does not appear in the findings either that the coterminous owners had agreed upon the fence as the line between lots 4 and 7, or that respondents had claimed it as such line. All that appears is, that respondents, in addition to the west half of lot 7, also held by adverse possession a part of lot 4 *as such;* and as they had paid no taxes on the part of lot 4 in their adverse possession, they could not invoke the statute of limitations. But I do not think that the provision of section 325 of the Code of Civil Procedure, about the payment of taxes, applies to a small strip along a boundary line, when the adverse holder claims that the general description in his title deed carries him to the line to which he had held adversely by actual possession, and he has paid the taxes on the land thus described in his deed.