[Civ. No. 356. Fifth Dist. Oct. 27, 1964.]

ROY S. WALNER et al., Plaintiffs and Respondents, v. THE CITY OF TURLOCK et al., Defendants and Appellants.

William C. Cullens and Cleveland J. Stockton for Defendants and Appellants.

Moody & Nelson and Oliver K. K. Nelson for Plaintiffs and Respondents.

STONE, J. — For convenience, plaintiffs and defendants will be herein referred to in the singular.

Defendant's predecessor, the St. Elmo Construction Co., owned a corner lot in the City of Turlock, fronting 60 feet on West Main and 150 feet along First Street to an alley. The west 50 feet on Main Street were occupied by a three-story hotel which extended 150 feet along First Street to the alley in the rear. A third party owned a brick building on the lot west of the St. Elmo property, so that between this building and the St. Elmo Hotel building St. Elmo had a 10-foot strip of land. On this strip between the two buildings the St. Elmo people constructed a store building, but no east or west walls were built. St. Elmo obtained permission to use the other owner's wall on the west, while on the east, floor joists were rested on the shoulder of the hotel foundation and ceiling joists were inserted in the hotel wall. Thus the west wall of the hotel, with which we are concerned, served as the east wall of the store building and furnished support for the floor and ceiling joists.

In 1924 plaintiff Roy Walner purchased from the St. Elmo people the store building, which was then being used as a barbershop. The deed described the property as beginning 50 feet west of the northeast corner of the St. Elmo lot and thence 10 feet west, thence 51 feet 8 inches southerly from Main Street toward the alley, thence 10 feet east, thence 51 feet 8 inches to the point of beginning. Plaintiff purchased an interest in the wall on the west and endeavored also to buy an interest in the east wall from St. Elmo, who refused to grant him other than an easement. This he accepted, and the easement was conveyed by a document which specified, in part, that the use of the wall was for support of the one-story building located upon the property conveyed to plaintiff, which right to support was ''during the existence of the said wall on the premises of the party of the first part, provided, however, that this conveyance is not intended to grant the party of the second part any greater right of use with respect to said wall than is now enjoyed by the said party of the second part and dominant tenement . . . .'' Additionally, the conveyance provided: ''nor shall the grantor be liable for the

destruction by fire, or otherwise, of said wall, nor does said grantor covenant to rebuild or maintain the same, and in the event of any destruction or removal the grantee shall have no further right or easement with respect to a wall built to replace the same.''

Plaintiff was also granted a separate easement under the surface of the soil from the back of the lot to the alley for the purpose of supplying water to the property and disposing of sewage, the grantor reserving the right to direct the location of the pipes; there was a provision for lapse of this easement for two years' nonuse.

Restrooms extended approximately 5.26 feet from the rear of the property purchased by plaintiff. Like plaintiff's building, the restrooms were built against the west wall of the St. Elmo Hotel, so that the wall gave the roof support and also formed the east wall. These restrooms, which were located 1.10 feet on plaintiff's property and 5.26 feet on hotel property, were not described in the conveyance of easement. However, Walner, his customers during the time he operated a barbershop on the premises, and subsequently his tenant and his tenant's employees and customers, used the restrooms for a total combined use of approximately 30 years. This use was shared with guests of the St. Elmo Hotel and tenants and customers of shops on the ground floor of the hotel building.

A strip of land retained by St. Elmo approximately 10 feet wide extending from the back of Walner's building to the city alley, was used for ingress and egress for over 30 years by Walner, his customers, his tenants and their customers and tradesmen. In 1954, at the request of the owner of the St. Elmo Hotel, plaintiff rebuilt the restrooms in order to comply with health and safety requirements of the City of Turlock. Also at the request of the owner of the St. Elmo Hotel property, plaintiff leveled and paved the strip of land used for ingress and egress between the rear of his building and the alley.

About six months before this action was commenced, plaintiff had his lot surveyed and discovered that there was approximately 0.90 foot between his east property line as described in the deed, and the St. Elmo Hotel west wall. Plaintiff claimed title to this 0.90 foot of land upon the doctrine of adverse possession.

The City of Turlock appears as defendant in its proprietary capacity, as it purchased the St. Elmo property in 1962.

The city took title to the hotel building, which was approximately 50 years old, and the 10-foot strip between the alley and Walner's building, including all of the land upon which the restrooms are located except the 1.10 feet on plaintiff's land. The testimony on behalf of the city was that the property was purchased so that the hotel building could be demolished because it was an "eyesore" that had deteriorated beyond feasible repair, in the heart of the city. The lot was then to be sold so that a building complying with present building restrictions could be constructed thereon. Defendant city gave plaintiff notice by letter that it intended to demolish the building within 30 days.

Plaintiff filed an action seeking a temporary injunction to restrain the city from removing the wall, and for a permanent injunction requiring the city to leave standing enough of the wall to support plaintiff's building and the restrooms. Thereafter the building, except for that portion of the wall supporting plaintiff's building and the restrooms, was demolished. The court (1) permanently enjoined the city from destroying or demolishing the remainder of the wall; (2) quieted plaintiff's title to the 0.90 foot between the brick wall and plaintiff's property line, upon the theory of adverse possession; and (3) adjudged that plaintiff had an easement to use the restrooms, together with an easement of ingress and egress over the strip of land between the rear of plaintiff's building and the city alley.

## The Written Easement

Initially, we point out that plaintiff acquired no interest in the land by reason of the conveyance of the easement in the wall for support. Not only does the document of conveyance limit the easement to the wall and support therein, but the California cases, beginning with *Cohen* v. *Adolph Kutner Co.*, 177 Cal. 592 [171 P. 424, L.R.A. 1918 D 410], in 1918, have approved the doctrine that an easement in a building for a particular purpose carries with it no interest in the land, and that when the building is destroyed the easement ceases. The principle that destruction of the servient tenement extinguishes the easement of the adjacent dominant tenement has been followed by the courts of the state since *Cohen*. (See *Rothschild* v. *Wolf*, 20 Cal.2d 17, 21 [123 P.2d 483, 154 A.L.R. 75].)

*Rothschild, supra,* which was decided in 1942, is the most recent expression by the Supreme Court of the precepts governing the respective interests of the dominant tenement

and the servient tenement when the two tenements are adjacent buildings. The court was in agreement as to the proposition that destruction of the servient tenement without fault of the servient owner, extinguishes the easement, but the court divided four to three on the question of whether economic disadvantage gives the owner of the servient structure the right of voluntary destruction of the building with consequent extinguishment of the easement. The minority opinion, expressed in a dissent, would recognize the right of the owner of the servient structure to terminate the easement by remodeling or rebuilding when sound economic practices dictate modernization to overcome obsolescence, provided, of course, the terms of the easement do not express a contrary intention.

After events have proved the foresightedness of the dissent in *Rothschild*, in that the growth of outlying shopping centers has accentuated the obsolescence and decadence of many downtown buildings, the remodeling or rebuilding of which often has been impeded by easements such as the one before us. The majority opinion, however, even though it denies the servient owner the right to demolish his building solely for his economic advantage, inferentially holds that for practical purposes depreciation and obsolescence can progress to the point of being tantamount to destruction. When this occurs, the destroyed-building, extinguished-easement doctrine becomes applicable. This is clear from the following language appearing at page 20 of *Rothschild, supra*:

" 'In this respect, however, we do not wish to be understood as intimating that depreciation or obsolescence of a building may not in the course of time so far progress as to impair property rights in the further maintenance thereof even though not to the extent of being the equivalent of destruction of such building. In the instant case no claim is made that the property is being operated at a loss, but to the contrary the evidence discloses a fair net return to respondents on their investment.' "

Since the hotel building was not destroyed by a means beyond the control of defendant, the question whether defendant's voluntary demolition of the building extinguished the easement, comes to us solely upon the problem of economic obsolescence. This issue was properly raised by the pretrial order, which paraphrased the above quoted language from *Rothschild*. It reads, in part:

"Issues: . . . . . . . . . .

"5) Whether or not depreciation and obsolescence have so

far progressed as to make it economically disadvantageous for the servient tenement to continue to be subject to any easements which plaintiffs allege to possess as owner of the dominent tenement.''

Testimony adduced at the trial revealed that the electrical wiring in the building was approximately 50 years old, open, very dangerous and a fire hazard; that 26 rooms on the second floor had been boarded up since 1954 and were not allowed to be occupied as they had no outside ventilation or lighting. The interior of the building had deteriorated badly; the plaster had become ''wrecked'' with holes poked completely through walls so that one could pass from one room into another without going through a door. The south portion of the second floor of the building sagged 2 inches and the third floor an inch and a half. The roof had settled to the extent that it held water in large areas. These pools of water put a tremendous load on the roof. The exterior brick walls contained steel reinforcing only over the two entrances to the building, otherwise the walls were brick held together by 50-year-old mortar that defendant's witness described as lifeless and crumbly. Further, there were no ties between the bricks in the wall and the concrete slab foundation.

█ Pursuant to Code of Civil Procedure section 634, defendant requested a special finding on the issue to which this evidence was relevant, but the court declined to make one. Under like circumstances it was held in *Hine* v. *Carmichael*, 205 Cal.App.2d 663, 666 [23 Cal.Rptr. 331]:

''Failure to make definite findings on factual issues presented by pleadings, particularly where there is substantial evidence which would have sustained a finding for the appealing party, requires a reversal.'' (See also *Calloway* v. *Downie*, 195 Cal.App.2d 348, 352-353 [15 Cal.Rptr. 747]; *Culbertson* v. *Cizek*, 225 Cal.App.2d 451, 465 [37 Cal.Rptr. 548].)

█ Defendant city argues that we should go a step further and not only reverse, but do so with directions to enter judgment for it upon the ground the servient owner reserved in the conveyance of easement the right to destroy or remove the wall and extinguish the easement at will. The city relies upon the language: ''nor does said grantor covenant to rebuild or maintain the same, and in the event of any *destruction or removal* the grantee shall have no further right or easement with respect to a wall built to replace the same.'' (Italics added.)

The trial court interpreted the word ''removal'' as synonymous to and merely descriptive of ''destruction,'' rather

than as conferring upon the servient owner a separate and independent right to demolish the wall at his will. ▪ Although a reviewing court is not bound by the trial court's interpretation of a written document, in the absence of extrinsic evidence, as here, the reviewing court will accept an interpretation if reasonable or if the interpretation of the trial court is one of two or more reasonable constructions of the instrument. (*Lundin* v. *Hallmark Productions, Inc.,* 161 Cal.App.2d 698, 701 [327 P.2d 166] ; *Kasey* v. *Molybdenum Corp. of America,* 176 Cal.App.2d 346, 353 [1 Cal.Rptr. 393].)

▪ We cannot say the trial court's interpretation of the contract is unreasonable, since it is unlikely that plaintiff would buy the building and require that the easement for support and use of the wall be reduced to writing if the easement conveyed was so tenuous that it could be "removed" the next day at the whim of the servient owner. The carefully worded document of conveyance contains no intimation of a reservation by the grantor of the right to remove the wall at his will, other than the one word "removal" upon which defendant has seized. Defendant's interpretation appears unreasonable to us when the word "removal" is read in context. (*Fisher* v. *General Petroleum Corp.,* 123 Cal.App.2d 770, 776 [267 P.2d 841].) We reject defendant's argument and reverse the judgment as to the wall easement solely upon the trial court's failure to make a finding upon the issue of economic obsolescence.

▪ We also reject plaintiff's argument that *Rothschild, supra,* does not apply since the building had been demolished and only the wall left standing at the time of trial. Plaintiff had 30 days' advance notice of the proposed demolition; thereafter he filed an action to enjoin removal of that part of the wall necessary to support his building, and defendant left that part of the wall standing pending the outcome of this lawsuit. The basic legal rights of the parties were not changed by partial demolition of the building or the issuance of the injunction preventing complete demolition.

As we view plaintiff's argument, it would gain relevancy only if we were to hold that the servient tenement consists of just that portion of the wall used by the dominant tenement, and that destruction or removal of that part of the wall must be considered separately and not as integral to the building or structure of which it is a part. Some textwriters and out-of-state authorities seem to support plaintiff's position, but we are cited no California case so holding. In

weighing the results that would follow from plaintiff's interpretation of the scope of the wall-easement doctrine, we believe it inadvisable to increase the burden of adjoining-building easements and impede the improvement of, and fullest use of, the servient structure. It follows that such a doctrine would seriously hamper the alienation of property subject to building easements. Under plaintiff's theory, destruction of the three-story building in question by a force beyond the control of the servient owner would not extinguish the easement if a part of the wall were left standing that was strong enough to support the ceiling and floor joists of his building. Certainly this intention cannot be gleaned from the written conveyance before us, and we do not read into the law of California a burden upon a servient tenement this extensive in the absence of a specific agreement to the contrary. If the building of which the wall is a part is substantially destroyed beyond its use as a building, the servient owner cannot be forced to leave a part of one wall standing to accommodate the dominant owner.

One other facet of the judgment concerning the wall easement must be touched upon before we pass to the other issues. It concerns the injunction by which the trial court permanently enjoined defendant from removing the wall. The injunction in perpetuity exceeds the scope of the written easement conveyed to plaintiff in the first place, the easement upon which the court predicated the judgment. To that extent the permanent injunction exceeded the authority of the trial court.

### PLAINTIFF'S TITLE TO 0.90 FOOT OF DEFENDANT'S LAND BY ADVERSE POSSESSION

Both parcels of real property were in common ownership at the time plaintiff purchased his property and obtained his easement for support in the grantor's adjoining wall. Some 30 years later, and about 6 months before this action was commenced, a surveyor discovered there was 0.90 foot of land between plaintiff's east property line and the grantor's brick wall.

Plaintiff contends the 0.90 foot between his line and the wall resulted from an error in the description of the deed which was not discovered until the survey was made. Accordingly, a cause of action seeking reformation of the deed was pleaded. A demurrer to that cause of action was sustained without leave to amend; defendant's predecessor filed a disclaimer, and a judgment was entered for defendant

on that cause of action, from which plaintiff has not appealed. Rather, he elected to rely upon another cause of action, claiming title to the 0.90 foot under the doctrine of adverse possession. The court found for him on this issue, and quieted title in plaintiff to the narrow strip of land.

Even though plaintiff abandoned the cause of action for reformation of his deed, he has not abandoned his contention that the parties intended the deed to convey to him all land up to defendant's wall. At first blush this looks to be true, and it would appear that whoever built defendant's building simply mismeasured the distance from the northeast corner of the lot to the west boundary of the building. A closer look at the record shows this was not the case. The foundation for the wall juts out 3 inches beyond the bottom of the brick wall, then slopes gradually for some 6 inches, from which point the concrete gradually fans out to the foundation bottom. An engineer, the only witness who examined the foundation, testified that the cement was poured without forms, that is, in an open dirt trench. This engineer dug down along the foundation at several points and found that the bottom was from 1 to 2 inches from the line described in plaintiff's deed.

Whoever built the building in 1911 quite properly measured to the west line of the foundation, not the brick wall laid on the foundation. It appears that plaintiff's deed described all the land that was intended to be conveyed. It is inconceivable that plaintiff, as grantee, expected to get part of the foundation for the wall when the grantor refused to sell an interest in the wall itself; and it is likewise inconceivable that the owner of a wall intended to sell off part of the foundation of his wall while refusing to convey other than an easement in the wall itself. Certainly the record does not sustain plaintiff's contention that the description in his deed, which commenced 50 feet west of the corner of the grantor's lot, was an erroneous description.

Whether the description was in error or not, no title by adverse possession ripened from plaintiff's use of the property. In the first place, plaintiff did not pay the taxes assessed against the 0.90-foot strip of land. As pointed out by Mr. Witkin in his Summary of California Law, volume 2, page 878, California requires that the adverse possessor, in order to claim title, must have paid all of the taxes levied and assessed against the land during the period of alleged adverse possession.

██ The record reflects that the land here involved was assessed according to the deeds on file in the office of the county recorder. Plaintiff was assessed for land commencing 50 feet west of defendant's northeast corner, which did not include the 0.90 foot. On the other hand, defendant's predecessors paid taxes on land described in their original deed, less the portion described in plaintiff's deed. Thus defendant and its predecessors, not plaintiff, paid the taxes on the 0.90-foot parcel at all times prior to trial.

In the second place, the conveyance of easement giving plaintiff the right to use the wall necessarily included the foundation, an integral part of the wall, because the wall could not stand without it. Thus the easement gave plaintiff the right to have his ceiling and floor joists cross over the 0.90 foot of foundation area to rest on the wall, the place they were resting at the time the easement was reduced to writing. The use was not adverse, but in accordance with the terms of the written easement quoted hereinbefore. It follows that plaintiff's right or interest in the 0.90 foot rests in whether or not defendant may extinguish the easement under the doctrine of economic obsolescence, discussed above.

EASEMENT TO USE RESTROOMS AND RIGHT-OF-WAY FOR INGRESS AND EGRESS FROM ALLEY TO REAR OF PLAINTIFF'S BUILDING

██ Following his purchase of the property, plaintiff conducted a barbershop thereon for approximately 10 years. Since then the premises have been leased to a restaurant operator. Patrons of both businesses used restrooms located at the rear of plaintiff's property for over 30 years. The restroom building is attached to defendant's west wall and 1.10 feet of the 6.36-by-5-foot building rests on the south edge of plaintiff's lot. Also for 30 years plaintiff, his tenant, their patrons and tradesmen have used the strip of land approximately 10 feet wide reaching from the rear of plaintiff's property to the alley, for purposes of ingress and egress.

Defendant questions that the use of the restrooms and the 10-foot access strip was adverse because such use was in common with guests of the adjoining hotel and with customers of the stores on the ground floor of the hotel building. ██ Use in common, even with nondescript users sometimes referred to as the public, does not prevent a use by particular persons or a particular class of persons from meeting the requirement that a use must be open, notorious, and adverse, to ripen into an easement. (*O'Banion* v. *Borba*, 32 Cal.2d 145, 151-152 [195 P.2d 10].)

██ Whether use of an easement has been adverse and under claim of right or has been permissive and with the owner's consent, is a question of fact to be treated by a reviewing court in the same manner and governed by the same principles as issues of fact are treated in any other civil appeal. (*Serrano* v. *Grissom*, 213 Cal.App.2d 300, 304 [28 Cal.Rptr. 579].) If there is substantial evidence to support the judgment, it must be affirmed; all conflicts must be resolved in favor of the prevailing party and the evidence must be viewed in a light most favorable to him. (*O'Banion* v. *Borba, supra,* at p. 147; *Van Amersfoort* v. *Young,* 105 Cal.App.2d 22, 25 [232 P.2d 569].)

██ The record here reflects that plaintiff, his lessee, and the customers of the businesses conducted on plaintiff's premises, used the restrooms and the easement of ingress and egress openly, notoriously and without the consent or permission of anyone, for over 30 years. We cannot set aside the finding of the trial court that the use of the restrooms and the passageway was adverse, even though there is conflicting evidence. (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557].)

██ Finally, defendant argues that since plaintiff remodeled the restrooms and leveled and cemented the walkway to the alley at his own expense and at the servient owner's request, the use could not have been adverse. The restrooms, however, were rebuilt to conform to health and building requirements. Plaintiff, as the owner of a restaurant building, was required by law to furnish restroom facilities for his lessee's customers. Remodeling restroom facilities to bring them up to the mark did not make the use permissive where the alternative was to have the city take away the use completely. The dominant owner's improvement of an easement does not automatically extinguish the easement. It merely presents a question of fact whether the use was adverse prior to as well as following the improvement work.

As we held in *Serrano* v. *Grissom, supra,* at page 303:

"Standing alone, improving or paying for the improvement of a right of way is insufficient to prove a permissive use. Certainly it will not serve to set aside the trial court's finding of adverse use." (See *O'Banion* v. *Borba, supra,* at pp. 151-152.)

██ There is sufficient evidence of a substantial character to support the trial court's finding that plaintiff's use

of the restrooms and of the alleyway was adverse, and that these uses had ripened into easements.

The judgment that plaintiff has an easement in defendant's wall, and the permanent injunction concerning said wall easement, are reversed. The judgment quieting title in plaintiff to a 0.90-foot strip of land adjacent to his east boundary is reversed. The judgment that plaintiff has an easement for use of the restrooms and the passageway to the alley is affirmed.

Conley, P. J., and Brown (R. M.), J., concurred.

A petition for a rehearing was denied November 23, 1964, and respondents' petition for a hearing by the Supreme Court was denied December 23, 1964. Peters, J., was of the opinion that the petition should be granted.