[Civ. No. 40293. First Dist., Div. Two. Jan. 18, 1978.]

PHILLIP S. BERRY et al., Plaintiffs and Appellants, v.
JOHN PAUL SBRAGIA et al., Defendants and Respondents.

## COUNSEL

Phillip S. Berry, in pro. per., Berry & Berry and Peter R. Gilbert for Plaintiffs and Appellants.

Stark, Stewart, Simon & Sparrowe and Ned Robinson for Defendants and Respondents.

## OPINION

**TAYLOR, P. J.**—This is an appeal by Phillip and Gail Berry[1] (Berrys), from a judgment denying relief on their complaint and quieting title on the cross-complaint of John Paul and Geraldine Sbragia (Sbragias), their neighbors, to a fence, on the theory of a prescriptive easement. We have concluded that the judgment must be reversed.

The basic facts are not in dispute. The Berrys and Sbragias own adjacent parcels of real property in Lafayette. When the Sbragias acquired their lot in 1964, the subdivider informed them that their rear property line approximated an existing wire fence; consistent with this belief, the subdivider constructed a drainage ditch and graded the Sbragia lot to the approximate location of the ditch and wire fence. In the summer of 1967, Sbragias replaced the wire fence with a 6-foot-high wooden fence and planted the 560-square foot area enclosed by it. Sbragias believed the wire fence was on the property line and put the

---

[1]Although the judgment and notice of appeal indicate that Gail Berry is a party, no document indicating an amendment to include her is in the clerk's transcript. At the oral argument, the parties stipulated to the inclusion of Gail Berry.

wooden fence inside what they believed was their property because of the drainage ditches. They did not intend to claim any additional property by erecting the fence.

The Berrys acquired their property in 1973. In 1974, they discovered through a survey that the fence and plantings, in fact, were located on their parcel. The Berrys planned to subdivide and sell their parcel. The presence of the fence has frustrated and interfered with a sale. At all times, Berrys or their predecessors have paid taxes on the portion of their property enclosed by the Sbragias' fence.

After unsuccessful attempts to settle the dispute, Berrys in 1975 filed the instant action seeking injunctive relief to compel removal of the fence, damages for trespass and declaratory relief; Sbragias answered and cross-complained to quiet title to the prescriptive easement of the fence. Sbragias admitted that the fence encroached on the Berrys land and deprived the Berrys access to the land enclosed by the fence, except at pain of climbing the fence.[2]

The court found that since its installation, and for a period in excess of five years, the fence, trees and shrubs have been openly, notoriously, and continuously maintained under claim of right by Sbragias, which maintenance and claim have been hostile to the Berrys. Sbragias have not paid real property taxes on the property in dispute. Berrys are not entitled to any relief except a declaration of the rights and duties of the parties, namely, Sbragias have a prescriptive easement to maintain the fence, trees and shrubs in substantially the same location and condition as presently maintained. The court concluded that Sbragias had a prescriptive easement to the fence and over the fenced property, but that the Berrys retained the underlying fee, subject to a reasonable right of inspection at all reasonable times.

■ The elements necessary to establish a prescriptive easement are, with the exception of the requirement that taxes be paid,[3] identical with

---

[2]Sbragias' answer to Berrys' interrogatories on this matter stated: "Yes, assuming plaintiff, a renowned member of the American Alpine Club, would suffer pain in traversing cross-complainants' simple board fence."

[3]The fact that Sbragias did not pay taxes on the disputed property does not preclude their acquisition of a prescriptive easement "Absent a showing that the easement was separately assessed, burden of proof of which is upon the owner of the servient estate" (see *Cleary* v. *Trimble*, 229 Cal.App.2d 1, 11 [39 Cal.Rptr. 776]; *Glatts* v. *Henson*, 31 Cal.2d 368 [188 P.2d 745]).

those required to prove acquisition of title by adverse possession:[4] (1) open and notorious use that is (2) continuous and uninterrupted, (3) hostile to the true owner, and (4) under a claim of right. The statutory period necessary to acquire a prescriptive title is five years (*Taormino* v. *Denny*, 1 Cal.3d 679, 686 [83 Cal.Rptr. 359, 463 P.2d 711]; *Zimmer* v. *Dykstra*, 39 Cal.App.3d 422, 430 [114 Cal.Rptr. 380]).

The above four elements are designed to insure that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement. The burden of proof as to each and all of the requisite elements to create a prescriptive easement is upon the one asserting the claim. ■ The existence or nonexistence of each of the requisite elements to create a prescriptive easement is a question of fact for the court or jury. On appeal, all conflicts must be resolved in favor of the prevailing party and the evidence must be viewed in a light most favorable to him. If there is any substantial evidence to support the judgment, it must be affirmed (*Zimmer* v. *Dykstra, supra,* 39 Cal.App.3d, p. 431).

■ The uncontroverted evidence indicates that at all times, Sbragias believed they were constructing the wooden fence on their own property or the property line, and that they had no intention of claiming any property that did not belong to them. The requisite element of a hostile use under a claim of right is missing. Thus, there is no substantial evidence in the record to support the judgment, and it must be reversed (*Sylva* v. *Kuck,* 240 Cal.App.2d 127 [49 Cal.Rptr. 512]).

We are constrained to alleviate the confusion of the parties and avoid an error on retrial. We recognize that the novelty of an incident is no bar to its recognition as an easement if its creation violates no principle of public policy (*Wright* v. *Best,* 19 Cal.2d 368 [121 P.2d 702]). Civil Code section 801, subdivision 14, indicates that there may be an easement consisting of the right to have a divisional fence maintained by a coterminous owner. The instant case does not involve a divisional fence. We note that even where a right-of-way was acquired by prescriptive use, the owner of the servient tenement cannot lawfully maintain a fence on

---

[4] These requirements are set forth by Code of Civil Procedure section 749, which requires possession for the statutory period of 20 years to acquire property by adverse possession.

the boundary line of the two properties (*Nocera* v. *DeFeo* (1959) 340 Mass. 783 [164 N.E.2d 136]).

Sbragias have not cited, and our research has not disclosed, any authority for their contention that the mere erection and maintenance of the fence created an easement. They rely on *Steele* v. *Shuler*, 211 Cal.App.2d 698 [27 Cal.Rptr. 569], where the latter's prescriptive easement to use a road and garage was recognized after five years of open and notorious use and hostile possession. *Steele* also involved a balancing of the equities, as the use of the garage and road were of real importance to Shulers' use of their property. No such considerations are involved here. In the instant case, Sbragias are not making any use of the fence, nor did they hold it adversely to all the world (*Sorensen* v. *Costa*, 32 Cal.2d 453, 460 [196 P.2d 900]). The fence admittedly encroaches on the Berrys' property, adds a portion of the Berrys' property to the Sbragias' back yard, and prevents the Berrys access to the portion of their property enclosed by it, except by pain of climbing the fence.[5]

The record indicates that in an attempt to equitably resolve this dispute, the court below amalgamated the legal theories underlying prescriptive easements and agreed boundaries. ■ An agreed boundary occurs when there is confusion as to the boundary of land, the occupancy is under a mistake, and the intent is to claim only to the true line. Such a holding is not adverse to the true owner (*Sorensen* v. *Costa*, *supra*, 32 Cal.2d, p. 459). The requisites for an agreed boundary are: (1) uncertainty as to the true boundary; (2) an agreement between coterminous owners as to the true boundary; (3) acquiescence to the line so fixed for a period equal to the statute of limitations; and (4) the boundary so fixed must be identifiable on the ground (*Minson Co.* v. *Aviation Finance*, 38 Cal.App.3d 489, 495 [113 Cal.Rptr. 223]). Here, however, the record fails to show either an agreement as to the location of the boundary or acquiescence by the owners for the period of the statute of limitations.

The judgment is reversed.

Kane, J., and Rouse, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 16, 1978.

---

[5]At oral argument, Sbragias admitted that the Berrys were free to put a gate in the fence and make whatever use of the fenced off portion of their property that they wished, as long as it did not interfere with Sbragias' established use.