[S.F. No. 24325. Dec. 3, 1981.]

RICHARD L. GILARDI et al., Plaintiffs and Respondents, v. GARY L. HALLAM et al., Defendants and Appellants.

**COUNSEL**

Paulsen & Vodonick, E. John Vodonick and Michael F. Scully for Defendants and Appellants.

Caylor, Dowling, Edwards & Kaufman, Gary M. Caylor and Linda M. Hartman for Plaintiffs and Respondents.

**OPINION**

**BROUSSARD, J.**—Defendants appeal from judgment quieting plaintiffs' title to Lake of the Pines lot 1407, rejecting defendants' prescription and adverse possession claims to a portion of the lot. The parties stipulated to the facts and submitted the case to the judge without a jury.[1]

More than five years prior to the commencement of the action, defendants' predecessors, owners of lot 1408, improved a portion of lot 1407 by installing a sidewalk, sprinkler system, nine poplar trees, and a lawn. The sidewalk was used for access to and from a deck and dock on the lake. A survey stake purporting to establish the boundary between the two lots had been erroneously placed on plaintiffs' property without fault of either plaintiffs or defendants or their predecessors, and in making the above improvements and using them, defendants' and their

---

[1] In the superior court, other parties were joined, but the prescription and adverse possession claims between plaintiffs and defendants were severed for trial. The other parties to the superior court proceedings are not parties to the appeal.

predecessors relied upon the position of the stake. They believed that the improved portion of lot 1407 was part of their lot.[2]

Each party and their predecessors were assessed taxes by lot number. No record exists of the sidewalk or ornamental plantings having been considered in the appraisal of the improvements on lot 1408. That lot has a home on it; lot 1407 is unimproved except for the sidewalk and plantings described above.

Finding that defendants and their predecessors mistakenly believed from the outset that the disputed portion of lot 1407 was part of lot 1408, the trial court determined that they did not intend to claim any land which did not belong to them and that their possession was not hostile and adverse. The court also concluded that they had not paid taxes on the disputed property.

■ Title to property by adverse possession may be established either under color of title or by claim of right. (Code Civ. Proc., §§ 322-325.) When, as in the instant case, title is asserted by claim of right, Code of Civil Procedure section 324 provides: "Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

Section 325 of that code requires that to obtain title by adverse possession the land must be occupied and claimed for five years continuously and that claimants or their predecessors must have paid all taxes levied and assessed against the land.

The elements necessary to establish title by adverse possession are tax payment and open and notorious use or possession that is continuous and uninterrupted, hostile to the true owner and under a claim of title. (*Taormino* v. *Denny* (1970) 1 Cal.3d 679, 686 [83 Cal.Rptr. 359, 463 P.2d 1]; *Sorensen* v. *Costa* (1948) 32 Cal.2d 453, 458 et seq. [196 P.2d 900]; *West* v. *Evans* (1946) 29 Cal.2d 414, 417 [175 P.2d 219]; *Kunza* v. *Gaskell* (1979) 91 Cal.App.3d 201, 210-211 [154 Cal.Rptr. 101]; *Berry* v. *Sbragia* (1978) 76 Cal.App.3d 876, 879-880 [143 Cal.Rptr. 318].)

---

[2]The improved portion of lot 1407 is apparently a strip about 15 feet wide.

■ A prescriptive easement requires establishment of the same elements except that payment of taxes is required only if the easement has been separately assessed. (Civ. Code, § 1007; *Taormino* v. *Denny, supra*, 1 Cal.3d. 679, 686.)

■ Although there is some conflict in cases from other jurisdictions, the rule is settled in California that the requisite hostile possession and claim of right may be established when the occupancy or use occurred through mistake. In *Woodward* v. *Faris* (1895) 109 Cal. 12, 17 [41 P. 781], the court pointed out that most cases of adverse possession commenced in mistake and that the possession must be by mistake or deliberately wrong. To limit the doctrine of adverse possession to the latter possession places a premium on intentional wrongdoing contrary to fundamental justice and policy. Numerous cases have since recognized that title by adverse possession may be acquired though the property was occupied by mistake. (E.g., *Sorensen* v. *Costa, supra*, 32 Cal.2d 453, 459-461; *Park* v. *Powers* (1935) 2 Cal.2d 590, 596 [42 P.2d 75]; *Kunza* v. *Gaskell, supra*, 91 Cal.App.3d 201, 210-211; *Lobro* v. *Watson* (1974) 42 Cal.App.3d 180, 187 [116 Cal.Rptr. 533]; *Newman* v. *Cornelius* (1970) 3 Cal.App.3d 279, 289 [83 Cal.Rptr. 435]; *Winchell* v. *Lambert* (1956) 146 Cal.App.2d 575, 581-582 [304 P.2d 149]; see 3 Witkin, Summary of Cal. Law (8th ed. 1973) p. 1819.)

*Woodward* v. *Faris, supra*, 109 Cal.12, 17, also recognized an exception to the mistake rule where the possessor does not claim that his fences mark the true line but intends to move them to the true line when it is discovered. It was pointed out that in such cases the possessor is not claiming adversely. The exception was applied to deny a claim of adverse possession in *Holzer* v. *Read* (1932) 216 Cal. 119, 123 [13 P.2d 647], where the occupation of the land was by mistake "with no intention on the part of the occupant to claim as his own, land which does not belong to him, but with the intention to claim only to the true line wherever it may be."

The relationship between the mistake rule and the exception was addressed in *Sorensen* v. *Costa* (1948) 32 Cal.2d 453, 459-461 [196 P.2d 900]. Discussing *Woodward* and *Holzer* the court pointed out that the hostility requirement "means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, 'unaccompanied by any recognition, express or inferable from the circumstances of the right in

the latter.'" (32 Cal.2d at p. 459.) After recognizing the *Holzer* decision, the court reaffirmed the rule that title by adverse possession may be acquired when the possession or use commenced under mistake and upheld trial court determination that the land occupied on the basis of mistake was held adversely.[3]

Because under *Sorensen* adverse possession may be established by evidence that possession was based on mistake, it is apparent that rejection of the mistaken possession may not be based on speculation that the possessor might not have occupied the land had he known of the record title. Rather to show that the possession based on mistake was not hostile and adverse it must be established by substantial evidence that the possessor recognized the potential claim of the record owner and

---

[3]*Sorensen* v. *Costa, supra,* 32 Cal.2d 453, 459-460 states: "Appellant contends that as a matter of law respondent could not have acquired title by adverse possession because the mutual mistake of the parties for the statutory period precluded respondent from showing that the possession was hostile or adverse to the rights of the record owner. A similar contention was rejected by this court in *Woodward* v. *Faris,* 109 Cal. 12, 17 [41 P. 781]. The requirement of 'hostility' relied on by appellant (see *West* v. *Evans,* 29 Cal.2d 414, 417 [175 P.2d 219]) means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, 'unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter.' (4 Tiffany, Real Property [3d ed.], 425.) Appellant's contention that respondent's possession was not adverse is based on the statement in *Holzer* v. *Read,* 216 Cal. 119, 123 [13 P.2d 697], that 'where the occupation of land is by a mere mistake, and with *no intention on the part of the occupant to claim as his own,* land which does not belong to him, but with the intention to claim only to the true line wherever it may be, the holding is not adverse.' [Italics added.] That statement is not applicable to the present case, for the trial court found on the basis of substantial evidence that respondent and his predecessors did claim the land as their own and held it 'adversely to all the world.' The Holzer case involved a different situation, a dispute as to boundaries, that turned on the question whether the occupier in occupying up to a certain line intended to claim the land included in the record title of his neighbor or to claim only whatever land was described in his own deed. (See Code Civ. Proc., §§ 322, 324.) The trial court found that he intended to claim only the land described in his deed, and this court affirmed the judgment on the ground that in the absence of an intention to claim the land in dispute as his own, his possession was not adverse. On the other hand, in *Woodward* v. *Faris, supra,* 109 Cal. 12, 17, this court expressly held that if the claimant intends to claim the area occupied as his land, the mere fact that the claim was based on mistake does not preclude him from acquiring title by adverse possession. Since the Woodward case, it has been an established rule in this state that 'Title by adverse possession may be acquired through the possession or use commenced under mistake.' (*Park* v. *Powers, supra,* 2 Cal.2d 590, 596; *Lucas* v. *Provines,* 130 Cal. 270, 272 [62 P. 509]; see 1 Cal.Jur. 578; cases from other jurisdictions collected, 97 A.L.R. 14, 58; 4 Tiffany, Real Property [*supra*], § 1159; 1 Walsh, Commentaries on the Law of Real Property, § 19.)

"Nor is there any merit to appellant's contention that if adverse possession may be based on a mistaken entry, the period of the statute of limitations runs only from the discovery of the mistake."

expressly or impliedly reflected intent not to claim the occupied land if record title was in another. To hold that the occupier's belief of ownership of the disputed land showed without more an intent not to claim nonowned land would emasculate the mistake rule.

Plaintiffs rely on *Berry* v. *Sbragia* (1978) 76 Cal.App.3d 876, 880 [143 Cal.Rptr. 318] where the "uncontroverted evidence" indicated that the possessors believed they constructed the fence on their own property or the property line and "that they had no intention of claiming any property that did not belong to them." The opinion does not set forth the uncontroverted evidence establishing the intention. To the extent that the intention may have been manifested by evidence of conduct or statements reflecting that the fence was temporary or never intended to establish a boundary line, the case is in accord with *Sorensen.* However, the case is contrary to *Sorensen* to the extent that it might be read as meaning that evidence that the occupier believed he owned the land warrants without more. a finding that he did not intend to claim the land if he was mistaken.

Plaintiffs urge that the adverse possession doctrine should be modified in the light of modern conditions. They state that the doctrine arose during a period when conveyances used metes and bounds descriptions, while the great majority of property is now described by reference to subdivision lots.

The viability of the adverse possession doctrine was questioned in *Finley* v. *Yuba County Water Dist.* (1979) 99 Cal.App.3d 691, 696-697 [160 Cal.Rptr. 423]. The court reasoned that the underlying historical philosophy of the doctrine is that land use was favored over disuse and that modern environmental concerns in a sophisticated, congested, peaceful society may sometimes result in disuse being favored over use. However, it is questionable whether environmental concerns warrant a general policy against land use rather than one of merely regulating development in accordance with such concerns. In any event, the court recognized that the modern justification for the adverse possession doctrine is "to reduce litigation and preserve the peace by protecting a possession that has been maintained for a statutorily deemed sufficient period of time." (99 Cal.App.3d at p. 697.)

Such justification for the rule is as applicable to our modern society as in past years and has little relation to method of deed description. In

ascertaining the land described by map and parcel number, the land-owner must still resort to metes and bounds description.

◼ Plaintiffs also urge that the 1968 good-faith-improver legislation warrants modification of adverse possession doctrine because the legislation furnishes relief to the mistaken occupier. (Code Civ. Proc., § 871.1 et seq.) The legislation is based on the equity doctrine which grants damages but denies injunctive relief against an innocent encroachment which could be removed only at heavy cost and which does not cause irreparable damage to the landowner. (*Raab* v. *Casper* (1975) 51 Cal.App.3d 866, 872 [124 Cal.Rptr. 590].) A "good faith improver" is defined as one who makes an improvement to land in good faith and under a mistaken belief of law or fact that he is the landowner. (§ 871.1.)

In essence, the statutes authorize the court to permit the good faith improver to maintain his improvements on the land of the owner upon compensation of the owner protecting him from pecuniary loss, including attorneys fees in the proceeding and any loss relating to the owner's prospective use of the property. (§ 871.5.) There are a number of limitations on such relief. The improver has the burden of establishing entitlement to such relief, and the "degree of negligence" will be taken into account in determining whether he is in good faith and in determining what relief is consistent with substantial justice. (§ 871.3.) A court may not grant relief if a setoff or right of removal would accomplish substantial justice. (§ 871.4). In shaping relief, the court shall consider the owner's future plans for use of the land and his need for the land. (§ 871.5.)

When enacting the good-faith-improver statutes, the Legislature did not repeal or substantially modify the statutes governing adverse possession. Thus, there is nothing to indicate a legislative intent that the good-faith-improver statutes were intended to supplant or modify the adverse possession doctrine. Unlike the adverse possession doctrine, the statutes are not predicated upon length of occupancy. Insofar as the statutory policy is predicated upon mistake by the occupant, they reflect an intent to grant relief to the mistaken occupier, not to repudiate or reduce his rights. While some of the equities reflected by the statutes no doubt underlie our rule protecting the mistaken adverse possession, the legislative recognition of those equities points to adherence to the mistake doctrine of *Woodward* v. *Faris, supra*, 109 Cal. 12, 17 as affirmed

in *Sorensen* v. *Costa, supra*, 32 Cal.2d 453, 459-461, rather than repudiation or limitation of those cases.

We conclude that neither modern conditions nor the good-faith-improver statutes warrant repudiation of *Sorensen.* (3b) When it appears that the occupier enters the land mistakenly believing he is the owner, possession is adverse unless it is established by substantial evidence that he recognized the potential claim of the record owner and expressly or impliedly reflected intent to claim the disputed land only if record title was determined in his favor. Any implication to the contrary in *Berry* v. *Sbragia, supra*, 76 Cal.App.3d 876, 880 is disapproved.

(5a) The stipulated facts in the instant case establish that defendants and their predecessors took possession of the disputed land mistakenly believing they were the owners. There are no additional facts expressly or impliedly showing that they recognized the potential claim of the record owners or that they intended to renounce their claim if they did not have record title. The trial court finding that they did not intend to claim any land that did not belong to them is not supported by the record. Under the stipulated facts, their possession was hostile and adverse.

■ The burden is on the adverse claimant of the fee to establish that no taxes were assessed against the land or that if assessed he paid them. (*Glatts* v. *Henson* (1948) 31 Cal.2d 368, 372 [188 P.2d 745].) Ordinarily, when adjoining lots are assessed by lot number, the claimant to the disputed portion cannot establish adverse possession because he cannot establish payment of taxes. (*Friedman* v. *Southern California T. Co.* (1918) 179 Cal. 266, 271 [176 P. 442]; *Mann* v. *Mann* (1907) 152 Cal. 23, 29 [91 P. 994]; *McDonald* v. *Drew* (1893) 97 Cal. 266, 269 [32 P. 173]; *Finley* v. *Yuba County Water Dist.* (1979) 99 Cal.App.3d 691, 695 [160 Cal.Rptr. 423]; *Raab* v. *Casper, supra*, 51 Cal.App.3d 866, 878; *Walner* v. *City of Turlock* (1964) 230 Cal.App.2d 399, 409-410 [41 Cal.Rptr. 29]; *Johnson* v. *Buck* (1935) 7 Cal.App.2d 197, 202 [46 P.2d 771]; see *Sorensen* v. *Costa, supra*, 32 Cal.2d 453, 466.) However, where it is shown that there is an error in the description on the assessment roll, the claimant may establish the error and his payment of taxes. (*Sorensen* v. *Costa, supra*, 32 Cal.2d 453, 466-467.) In *Sorensen*, each landowner occupied half of the property included in his deed and half included in the deed of his next door neighbor. Each landown-

er paid taxes on the property bill submitted to him, the assessment rolls using the deed descriptions. It was held that the landowners paid taxes on the basis of the homes and lots occupied and that assessment roll descriptions were erroneous.

Similarly, where the claimant by construction of buildings or other valuable improvements or by the building of fences has visibly shown occupation of a disputed strip of land adjoining the boundary, several cases have reasoned that the "natural inference" is that the assessor did not base the assessment on the record boundary but valued the land and improvements visibly possessed by the parties. (*Price* v. *De Reyes* (1911) 161 Cal. 484, 489-490 [119 P. 893]; *Raab* v. *Casper, supra,* 51 Cal.App.3d 866, 878; *Drew* v. *Mumford* (1958) 160 Cal.App.2d 271, 276 [325 P.2d 240]; *Frericks* v. *Sorensen* (1952) 113 Cal.App.2d 759, 762 [248 P.2d 949].)

██ Under the stipulated facts, we must uphold the trial court's finding that defendants and their predecessors did not pay taxes on the disputed land. The parties and their predecessors were assessed taxes by lot number. There is no direct evidence that the sidewalk or ornamental plantings were considered in the assessment of the lots. There are no physical barriers, structures, or enclosures indicating that plaintiffs and their predecessors were excluded from using the sidewalk and planted areas on their land, or that the improvements were not a joint undertaking of the landowners. In the circumstances, the trial court was not required to infer that the assessor concluded the sidewalk and plantings reflected ownership of the disputed land by defendants and their predecessors.

As pointed out above, failure to pay taxes bars the claim of title by adverse possession. However, because no taxes were separately assessed, the lack of tax payment would not bar claim of prescriptive easement.

The parties have not briefed the questions whether a prescriptive easement for maintenance of landscaping would be the equivalent of a fee interest, whether such an interest may be obtained in the absence of tax payment (see *Raab* v. *Casper, supra,* 51 Cal.App.3d 866, 876-877), and whether the size of trees or bushes should be limited to their smallest size during the prescriptive period (see *O'Banion* v. *Borba* (1948) 32 Cal.2d 145, 155 [195 P.2d 10]). Accordingly, we do not address those questions.

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Newman, J., and Kaus, J., concurred.