[Civ. No. 48351. First Dist., Div. Two. Dec. 17, 1982.]

MERLE G. HOLMES et al., Plaintiffs, Cross-defendants and Appellants, v.
BURTON C. HARLAN et al.,
Defendants, Cross-complainants and Respondents;
HAZEL SPECKMAN, Defendant, Cross-complainant and Appellant.

*Assigned by the Chairperson of the Judicial Council.

**COUNSEL**

Raymond E. Schaal for Plaintiffs, Cross~~

Phil N. Crawford and Crawford~~ ~~ss-complainant and Appellant.

Crump, Bruchler & C~~ ~~ R. Edgar for Defendants, Cross-c~~

REHEARING GRANTED

This opinion (Holmes v. Harlan 138 Cal.App.3d 209) was published in error following an inadvertent entry in the authoring court's minutes that a petition for rehearing had been denied. In fact, the petition for rehearing had been granted. The court's final opinion on rehearing was not certified for publication. (Jan. 14, 1983).

**OPINION**

~~ ~~ra Holmes and defendant Speckman ~~ ~~e to a certain parcel of real property in ~~

This ~~ ~~-foot strip of real property lying between plaintiffs' and defe~~ ~~y. Plaintiffs purchased an approximately three acre parcel of la~~ ~~efendant Speckman in 1976. In conversations prior to the sale, Mrs. Sp~~ ~~man told plaintiffs that a certain fence constituted the property line and that, in her opinion, a barn was part of the property. Plaintiffs used the barn and road, planted a garden and installed a septic tank and trailer on the disputed strip.

Mrs. Speckman testified that she purchased the property in March 1975 and sold it to plaintiffs in June 1976. During the time she owned her parcel she used the barn, planted a garden and spread rocks within the disputed strip.

---

[1]The judgment also awarded plaintiffs $923 in damages against defendants Harlan and $3,788 in damages against defendant Speckman. The issues on appeal relate only to that portion of the judgment quieting title to the disputed property in defendants Harlan.

Robert Thompson, Speckman's predecessor in interest, purchased the land in 1969 and sold it to Mrs. Speckman in 1975. He used the road and barn as well as planted a garden on the portion of property here in question. He later rebuilt the barn in the same place where the old one had been located.

Steven Johnson, Thompson's predecessor in interest, purchased the tract in 1961. At the time he purchased the property, the fence and barn were located on it. His tenants used the roadway between the tree arbor located on the 39-foot strip.

Marvin Carpenter, chief appraiser for the assessor's office of Lake County, testified that taxes for the disputed strip of land had been paid by the defendants and their predecessors in interest. The taxes were for land without any improvements.

Plaintiffs and their predecessors in interest assumed that they owned the land up to the fence which included the 39-foot strip. Since at least 1955, portions of a fence ran along the south boundary of plaintiff's parcel. The fence did not enclose the property due to several 20 to 30 foot gaps. Nor could it restrain animals.

Defendants Harlan purchased their property in 1976. The deed to the property includes the strip here in dispute and they have paid all taxes levied against their entire parcel. Defendants did not see the fence nor enter upon the property during the time of their ownership although Burton Harlan had seen the fence during the period in which his father owned the property. The parties never agreed that the fence line was the boundary.

Plaintiffs and their predecessors have paid the taxes on the land only to the boundary line recorded in their deeds, which did not include the 39-foot strip. The heart of the dispute lies in the fact that plaintiffs and their predecessors have been assessed and have paid the taxes on the improvements (barn, road, septic tank, trailer) on the 39-foot strip and have used the same for an accumulated period of about 20 years. Thus, plaintiffs vigorously assert their ownership of the strip.

■ Plaintiffs contend that they acquired the strip in question by implied agreement of the boundary line. Citing *Spear* v. *Smith* (1958) 161 Cal.App.2d 744 [327 P.2d 36], they argue that such an agreement can be inferred from the long acquiescence of the parties. The contention is without merit.

■ It is settled that the mere acquiescence in the existence of a fence in the absence of any agreement that said fence shall be taken as the true boundary line is not sufficient to establish a claim of title to a disputed strip of ground.

(*Drew* v. *Mumford* (1958) 160 Cal.App.2d 271, 274 [325 P.2d 240]; *Dibirt* v. *Bopp* (1935) 4 Cal.App.2d 541, 543 [41 P.2d 174].) ██ Here, there was no evidence that the parties or their predecessors in interest ever expressly or impliedly agreed that the fence constituted the boundary line to their respective properties.

██ Plaintiffs also contend that they acquired title to the 39-foot strip of land by adverse possession.

Section 325 of the Code of Civil Procedure provides: "⌐ purpose of constituting an adverse possession by a person claiming ⌐ ⌐ded upon a written instrument, judgment, or decree, land · ⌐ been possessed and occupied in the following cases o⌐

"1. Where it has been protected by a ⌐

"2. Where it has been usually ⌐

"Provided, however, that · considered established under the pr⌐ code, unless it shall be shown that t' ⌐ for the period of five years contir⌐ ⌐ir predecessors and grantors, have ⌐icipal, which have been levied and nas construed the first and second ⌐tive. (See e.g., *County of Los An⌐* ⌐161 Cal.Rptr. 742, 605 P.2d 381]; *Br⌐* ⌐2d 327, 329 [21 Cal.Rptr. 401].)

In th⌐ ⌐ court's finding of fact No. 7 provides as follows: ⌐imed by *plaintiffs* was not protected by a substantial enclosu⌐ ⌐operty so claimed by *defendants* in the past had not been usually ⌐ ⌐ or improved." (Italics supplied.) Apparently the court determined that ⌐⌐ disputed strip was not substantially enclosed because the fence, thought to be the property line by plaintiffs and their predecessors in interest, had several large gaps in it and could not restrain animals. However, although the finding states that defendants had not cultivated their property, it fails to mention that plaintiffs and their predecessors had cultivated the disputed area. In addition to the fence, a barn and a road were on the land and continued to be used when Steven Johnson owned the property. After Robert Thompson purchased the parcel he rebuilt the barn and planted a garden on the disputed strip. Thereafter, Mrs. Speckman expanded the garden and otherwise cultivated the land with a tractor. Even if the fence may have been insufficient to protect the area by "substantial enclosure", there appears to be sufficient

REHEARING GRANTED

This opinion (*Holmes v. Harlan* 138 Cal.App.3d 209) was published in error following an inadvertent entry in the authoring court's minutes that a petition for rehearing had been granted. In fact, the petition for rehearing had been denied. In fact, the petition for rehearing was not... (Jan. 14, 1983). The court's final opinion on rehearing was not certified for publication.

evidence that the disputed strip was "usually cultivated or improved" by plaintiffs and their predecessors.

On the other hand, the evidence is clear that plaintiffs and their predecessors never paid the taxes for the 39-foot strip. Their payments were for the land up to the true boundary line as indicated in their grant deeds and only the improvements located on the disputed strip. Having failed to pay taxes on the land, plaintiffs' claim of adverse possession apparently is barred by section 325.

■ Plaintiffs next claim that they acquired a prescriptive easement to the 39-foot strip. The recent case of *Gilardi* v. *Hallam* (1981) 30 Cal.3d 317 [178 Cal.Rptr. 624, 636 P.2d 588] is particularly instructive on this issue.

In *Gilardi* the parties stipulated that more than five years prior to the commencement of the action defendants' predecessors, owners of lot number 1408, improved a portion of the adjacent property, lot number 1407, by installing a sidewalk, sprinkler system, nine poplar trees and a lawn. A survey stake purporting to establish the boundary between the two lots had been erroneously placed on plaintiffs' property without fault of either party or their predecessors. In making the improvements and using them, defendants and their predecessors relied upon the position of the stake, believing that the improved portion of lot 1407 was part of their lot. The parties and their predecessors were assessed taxes by lot number and there was no record of the sidewalk or plantings having been considered in the appraisal of the improvements on lot 1408. That lot had a home on it; lot 1407 was unimproved except for the sidewalk and plantings.

■ Reiterating settled law, our Supreme Court held that a prescriptive easement requires establishment of the same elements as adverse possession except that payment of taxes is required only if the assessment has been separately assessed. (30 Cal.3d at p. 322.) The court held that "[w]hen it appears that the occupier enters the land mistakenly believing he is the owner, possession is adverse unless it is established by substantial evidence that he recognized [a] potential claim of the record owner and expressly or impliedly reflected intent to claim the disputed land only if record title was determined in his favor." (30 Cal.3d at p. 326.) The court concluded that since no taxes had been separately assessed for the disputed land, the lack of tax payment did not bar a claim of prescriptive easement. (30 Cal.3d at p. 327.) The court never reached the issue of whether the prescriptive easement would be the equivalent of a fee interest or whether such an interest could be obtained in the absence of tax payment.

■ The present action presents an even stronger case for prescriptive easement. Although plaintiffs herein never paid taxes for the underlying land in dispute, they were assessed and did pay taxes for the improvements on the

strip. "[W]here the claimant by construction of buildings or other valuable improvements or by the building of fences has visibly shown occupation of a disputed strip of land adjoining the boundary, several cases have reasoned that the 'natural inference' is that the assessor did not base the assessment on the record boundary but valued the land and improvements visib¹ ˙ossessed by the parties." (*Gilardi* v. *Hallam, supra,* 30 Cal.3d 317, 327 ` ˙ase at bench, the assessor obviously considered the improvements r ˙tiffs' property despite the fact that the underlying land was ⸍ ˙ccording to the recorded deeds. Given this evidence we ˙intiffs acquired a prescriptive easement.

■ We note in passing that defen ⸍ ˙o raise any issues as to the validit˄ ˙tend that such findings do not supp⸍ ˙nt be affirmed. However, "the re˄ ˙ations contrary to or in addition ╁ ˙ual determinations may be based ⸍ ˙court either with or without the takir ˙ . . This section shall be liberally con⸍ ˙e feasible, causes may be finally di⸍ ˙t further proceedings in the trial c⸍ ˙e a new trial is required on some or ˙ , § 909, see also *Ernie* v. *Trinity* L ˙˙, 709 [336 P.2d 525]; *Duncan* v. *Peterson* ˙˸3 Cal.Rptr. 744].) Accordingly, this court finds ⸍ ˙ed a prescriptive easement to that property describe˄ ˙ (2).

The judge⸍ ˙versed except for that portion that adjudged "Plaintiffs have judgment ⸍ainst BURTON C. HARLAN in the amount of $173.00, plus $750.00 exemplary damages." and "Plaintiffs shall recover their costs from Defendants, HAZEL SPECKMAN and BURTON C. HARLAN," on the issue of damages herein.

Rouse, Acting P. J., and Smith, J., concurred.

A petition for a rehearing was denied January 14, 1983.

---

[2]The court's first finding of fact essentially stated that plaintiffs neither own in fee simple nor are possessed of the disputed property. The second finding of fact states that defendants are and were the owners of said land.

REHEARING GRANTED. This opinion (*Holmes v. Harlan* 138 Cal.App.3d 209) was published in error following an inadvertent entry in the authoring court's minutes that a petition for rehearing had been granted. In fact, the petition for rehearing had been denied on rehearing was not certified for publication. (Jan. 14, 1983).